*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0187p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

WILBUR BARNES,

        *Plaintiff-Appellee,*

    *v.*

TONY WRIGHT et al.,

        *Defendants-Appellants.*

No. 04-6288

Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green.
No. 03-00191—Thomas B. Russell, District Judge.

Argued: November 10, 2005

Decided and Filed: June 2, 2006

Before: MERRITT, MOORE, and SUTTON, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Cara L. Jarrell, KENTUCKY COMMERCE CABINET, Frankfort, Kentucky, for Appellants. Brenda Popplewell, BRENDA POPPLEWELL, ATTORNEY AT LAW, Somerset, Kentucky, for Appellee. **ON BRIEF:** Ellen F. Benzing, KENTUCKY COMMERCE CABINET, Frankfort, Kentucky, for Appellants. Brenda Popplewell, BRENDA POPPLEWELL, ATTORNEY AT LAW, Somerset, Kentucky, for Appellee.

---

**OPINION**

---

    KAREN NELSON MOORE, Circuit Judge. Defendants-Appellants appeal the district court's denial of their motion to dismiss or for summary judgment as to whether they are entitled to absolute or qualified immunity. Conservation officers had a dispute with Wilbur Barnes ("Barnes"), in which Barnes criticized them for failing adequately to perform their duties; Barnes removed a gun from his pocket, prompting one of the officers also to pull out his gun. The officers initiated and testified in grand jury proceedings against Barnes, who was later convicted in state court of three counts of second-degree wanton endangerment for pointing a gun at one of the officers. Barnes filed a complaint in federal district court, alleging that the officers maliciously prosecuted him and retaliated against him in violation of the First Amendment. The officers argue that they are entitled to absolute immunity, or, in the alternative, to qualified immunity. For the reasons discussed below, we **REVERSE** the district court's denial of qualified immunity to the officers.

1

# I. BACKGROUND

Wilbur Barnes regularly visited the Helm's Landing area, near the Cumberland River in Russell County, Kentucky, because his son, daughter-in-law, and granddaughter lived and owned property there. Joint Appendix ("J.A.") at 225 (Compl. ¶ 21). On March 24, 2002, Officer Tony Wright ("Wright") of the Kentucky Department of Fish and Wildlife Resources saw Barnes walking towards Helm's Landing with a gun in his hand. J.A. at 197 (Grand Jury Tr. at 6) (Wright Test.). Wright testified that he was not alarmed, because it was not unusual for Barnes to be carrying a gun. J.A. at 197 (Grand Jury Tr. at 6) (Wright Test.). Barnes approached Wright to complain about the fact that Wright had not taken any action against people on nearby property who were apparently shooting guns while consuming alcohol. J.A. at 197-98 (Grand Jury Tr. at 6-7) (Wright Test.). Wright told Barnes not to ever approach him with a gun in his hand again, or Wright would assume that Barnes intended to harm him. J.A. at 198 (Grand Jury Tr. at 7) (Wright Test.). After this incident, Barnes and Wright saw each other on several occasions without incident. J.A. at 202 (Grand Jury Tr. at 11) (Wright Test.).

On September 28, 2002, Barnes was checking on the family's property with his granddaughter. J.A. at 228 (Compl. ¶ 37). Wright and Officer Joby Gossett ("Gossett") drove by Barnes and his granddaughter, who were on an all-terrain vehicle; Wright, who was driving, stopped the officers' vehicle to investigate another vehicle. J.A. at 194 (Grand Jury Tr. at 3) (Wright Test.). After Barnes approached the officers with his hands in his pockets,[1] he commented that the officers had not been performing their duties. J.A. at 194 (Grand Jury Tr. at 3) (Wright Test.). Wright got out of the officers' truck, with his hand on his gun. J.A. at 195 (Grand Jury Tr. at 4) (Wright Test.). Wright asked Barnes if he had his gun in his pocket, and Barnes responded, "you damn right I have." J.A. at 195 (Grand Jury Tr. at 4) (Wright Test.). At that point, Barnes pulled his gun out of his pocket; Wright testified that Barnes's gun was pointed at him for a moment, but Barnes states that the gun was laying flat on his hand. J.A. at 195 (Grand Jury Tr. at 4) (Wright Test.); J.A. at 229 (Compl. ¶ 41). Gossett also testified that Barnes held the gun flat in his hand. J.A. at 209 (Grand Jury Tr. at 5) (Gossett Test.). When Wright pulled his gun out in response, Barnes put his gun back in his pocket. J.A. at 195 (Grand Jury Tr. at 4) (Wright Test.). Upon Wright's request, Barnes produced his carry and concealed gun permit. J.A. at 207 (Grand Jury Tr. at 3) (Gossett Test.). The men exchanged further angry words about whether the officers should have taken action with regard to the individuals who were drinking and shooting guns, and then the officers left. J.A. at 198 (Grand Jury Tr. at 7) (Wright Test.).

Barnes claims that the officers attempted to obtain an arrest warrant from the county attorney but that the county attorney "refused to issue the warrant." J.A. at 230 (Compl. ¶ 52). However, two county attorneys submitted affidavits stating that this was untrue; rather, the attorneys stated that "it was mutually decided that no warrant would be issued at this time in the hopes that the situation involving Mr. Barnes's behavior would improve." J.A. at 215-16 (Cooper Aff. ¶¶ 3-5); J.A. at 217-18 (Shearer Aff. ¶¶ 3-5); *see also* J.A. at 201 (Grand Jury Tr. at 10) (Wright Test.) (explaining that the county attorney said, "if you want a warrant I'll issue a warrant, but I believe it would [be] best to wait until it happens again, so that we can seize his gun"). Wright and Gossett testified before a grand jury on November 18, 2002. At the conclusion of the testimony, the grand jury issued an indictment on three counts of first-degree wanton endangerment and one count of interfering with a conservation officer. J.A. at 190-91 (Indictment). Barnes was arrested on November 19, 2002. J.A. at 219 (Uniform Citation).

Barnes filed a complaint against Wright, Gossett, and John Doe(s) in charge of training law enforcement officers (the "defendants") in federal district court on October 24, 2003. J.A. at 221

---

[1] In his complaint, Barnes states that he "remained seated on his four-wheeler." J.A. at 228 (Compl. ¶ 39).

(Compl.). The complaint included claims brought pursuant to 42 U.S.C. § 1983 alleging conspiracy, false arrest and unlawful seizure, free speech violation and retaliation, malicious prosecution, failure to train, and it also included state-law claims of malicious prosecution, false imprisonment and false arrest, negligent and intentional infliction of emotional distress, gross negligence, and conspiracy. J.A. at 236-50 (Compl.). On December 12, 2003, the defendants filed a motion to dismiss or for summary judgment. J.A. at 139 (Mot. to Dismiss or for Summ. J.).

Barnes's state criminal trial was held in the Russell Circuit Court in May 2004. J.A. at 34 (Notice of Status of State Criminal Action). The jury found him guilty of three counts of second-degree wanton endangerment; Barnes was fined $1,500.00 ($500.00 for each count). J.A. at 66-71 (Jury Instructions) (Verdict Form). He was acquitted of interfering with the duties of a conservation officer. J.A. at 76 (Jury Instructions) (Verdict Form). In July 2004, Barnes notified the federal district court of the status of his state criminal case, explaining that he was not appealing his misdemeanor convictions. J.A. at 35 (Notice of Status of State Criminal Action).

The federal district court issued an opinion on September 28, 2004, in which it granted in part and denied in part the defendants' motion for dismissal or summary judgment. J.A. at 8 (Mem. Op. at 1). All of the claims were dismissed except for Barnes's First Amendment retaliation claim and his claim for "malicious prosecution and false arrest for interfering with the duties of Fish and Wildlife Officers." J.A. at 17 (Mem. Op. at 10). The district court found that the defendants were not entitled to absolute immunity for their grand jury testimony, J.A. at 12 (Mem. Op. at 4-5), and that they were not entitled to qualified immunity with respect to Barnes's remaining constitutional claims, J.A. at 15-16 (Mem. Op. at 8-9). The defendants timely appealed the district court's denial of their motion as to absolute and qualified immunity. J.A. at 5 (Notice of Appeal).

## II. ANALYSIS

### A. Jurisdiction

"As a threshold matter, we must first determine whether we have jurisdiction to consider [the defendants'] interlocutory appeal." *Sample v. Bailey*, 409 F.3d 689, 694 (6th Cir. 2005). Appellate courts have "jurisdiction to hear appeals only from 'final decisions' of district courts." *Johnson v. Jones*, 515 U.S. 304, 309 (1995) (citing 28 U.S.C. § 1291). "[I]nterlocutory appeals–appeals before the end of district court proceedings–are the exception, not the rule." *Id.* The Supreme Court "has held that certain so-called collateral orders amount to 'final decisions' immediately appealable under the here-relevant statute, 28 U.S.C. § 1291, even though the district court may have entered those orders before (perhaps long before) the case has ended." *Id.* at 310 (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545 (1949)).

The Supreme Court recently addressed the collateral-order doctrine in *Will v. Hallock*, 126 S. Ct. 952 (2006). *Will* involved the question of "whether a refusal to apply the judgment bar of the Federal Tort Claims Act is open to collateral appeal." *Id.* at 956. The Court held that the judgment bar is not open to collateral appeal, *id.*; in so holding, the Court emphasized the "modest scope" of the collateral-order doctrine, *id.* at 958. The opinion explains:

> Since only some orders denying an asserted right to avoid the burdens of trial qualify, then, as orders that cannot be reviewed "effectively" after a conventional final judgment, the cases have to be combed for some further characteristic that merits appealability under *Cohen*; and as *Digital Equipment* explained, that something further boils down to "a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement."

*Id.* at 958-59 (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 878-79 (1994)). *Will* established the following rule: "it is not mere avoidance of a trial, but avoidance of a trial that

would *imperil a substantial public interest*, that counts when asking whether an order is 'effectively' unreviewable if review is to be left until later." *Id.* at 959 (emphasis added). The Court provided examples of orders that are immediately appealable, including "orders rejecting absolute immunity, *Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982)), and qualified immunity, *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)." *Id.* at 958. We therefore have jurisdiction to review the defendants' claims of qualified immunity pursuant to both *Mitchell* and *Will*.[2] Because we hold that the defendants are entitled to qualified immunity, we do not address the question of our jurisdiction as to the defendants' absolute-immunity claims.

**B. Standard of Review**

"We review the district court's denial of defendant[s'] claims that [they are] entitled to absolute or qualified immunity *de novo*, as that issue is a question of law." *Spurlock v. Satterfield*, 167 F.3d 995, 1000 (6th Cir. 1999). The defendants filed a motion to dismiss or for summary judgment; the district court treated the defendants' qualified-immunity claim as a motion for summary judgment. In reviewing the district court's denial of a motion for summary judgment, we "mak[e] all reasonable inferences in favor of the nonmoving party to determine if a genuine issue of material fact exists." *Ireland v. Tunis*, 113 F.3d 1435, 1440 (6th Cir.), *cert. denied*, 522 U.S. 996 (1997). "'Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law.'" *Id.* (quoting *Pusey v. City of Youngstown*, 11 F.3d 652, 655 (6th Cir. 1993)).

**C. Qualified Immunity**

"[T]he Supreme Court [has] held that 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "'The central purpose of affording public officials qualified immunity from suit is to protect them from undue interference with their duties and from potentially disabling threats of liability.'" *Id.* (quoting *Elder v. Holloway*, 510 U.S. 510, 514 (1994)) (internal quotation marks omitted). We employ a three-step test in reviewing claims for qualified immunity:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff[ ] show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

---

[2] We note that "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson*, 515 U.S. at 319-20. In sum, "'[a] denial of qualified immunity on purely legal grounds is immediately appealable. A denial of qualified immunity that turns on evidentiary issues is not.'" *Sample*, 409 F.3d at 695 (quoting *Turner v. Scott*, 119 F.3d 425, 427 (6th Cir. 1997)). The district court concluded that it could not grant the defendants' motion with regard to qualified immunity because of "factual dispute[s]" as to whether "retaliation was a partial motive for Mr. Barnes's arrest" and whether "the officers acted reasonably in arresting Mr. Barnes for intentional interference with fish and wildlife officers." J.A. at 16 (Mem. Op. at 9). "[R]egardless of the district court's reasons for denying qualified immunity, we may exercise jurisdiction over the officers' appeal to the extent it raises questions of law." *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996). Thus, we will review the legal question of whether the defendants violated Barnes's constitutional rights, viewing the facts in the light most favoring Barnes. *Id.*

*Sample*, 409 F.3d at 695-96 (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)) (alteration in original). We address each of the defendants' arguments regarding qualified immunity in turn below.

### 1. *Summers v. Leis*

The defendants first assert that the district court erred in denying the motion to dismiss or for summary judgment on the basis of a perceived factual dispute; such a holding, they claim, is impermissible in light of our decision in *Summers v. Leis*, 368 F.3d 881 (6th Cir. 2004). Appellants Br. at 28-30. In *Summers*, the district court denied the defendant's summary judgment motion because it believed that "any decision regarding qualified immunity was premature and should await the close of discovery." *Id*. at 887. However, the plaintiff failed adequately to assert his need for further discovery, as required by Federal Rule of Civil Procedure 56(f). *Id*. We held, "[i]n the absence of a sufficient affidavit, there is no justification for the district court's determination that a motion for summary judgment would be premature until the close of discovery." *Id*.

Barnes responds that *Summers* is inapplicable to this case because the district court did in fact address the merits of the defendants' qualified-immunity claims. Appellee Br. at 44. We agree. The district court denied the motion for summary judgment on the issue of qualified immunity on the basis of disputed issues of fact; it did not, however, decline to address the claims as in *Summers*. As we explained above, we may review the legal question of whether the defendants are entitled to qualified immunity, notwithstanding that the district court denied summary judgment to the defendants on the basis that there are disputed issues of fact.

### 2. Malicious Prosecution/False Arrest

Barnes asserts a malicious-prosecution claim with regard to the offense of interfering with a conservation officer. Appellee Br. at 34. We "recognize a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment." *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003). Such a claim encompasses wrongful investigation, prosecution, conviction, and incarceration. *Id*. at 258 (citing *Spurlock*, 167 F.3d at 1005-07). "Although this Court has yet to resolve the elements of a federal malicious prosecution claim, it is clear that a plaintiff must show, at a minimum, 'that there was no probable cause to justify [his] arrest and prosecution.'" *Id*. at 259 (alteration in original). The relevant Kentucky statute provides as follows: "No person shall resist, obstruct, interfere with or threaten or attempt to intimidate or in any other manner interfere with any officer in the discharge of his duties under the provisions of this chapter." KY. REV. STAT. ANN. § 150.090(6). Barnes states that "there was no testimony provided to support the Officer[s'] false assertion Mr. Barnes interfered with their duties."[3] Appellee Br. at 37.

Barnes's claim must fail, however, "[b]ecause he cannot show the absence of probable cause." *Thacker*, 328 F.3d at 259. He does not dispute that the grand jury indicted him on the charge of interfering with a conservation officer, J.A. at 191 (Indictment); rather, he claims that the defendants misled the grand jury, which led to his improper arrest, Appellee Br. at 34. "However, it has been long settled that 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer.'" *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002). "Therefore, because [Barnes] was indicted pursuant to a determination made by the grand jury, he has no basis for his constitutional claim." *Id*.

---

[3]At oral argument, Barnes's counsel also emphasized the fact that the defendants felt free to continue patrolling this area even after the confrontations with Barnes; she argued that this indicated that Barnes did not interfere with the defendants' official duties.

In addition to the preclusive effect of the indictment, a review of the facts of the case also demonstrates that the defendants had probable cause to seek an indictment against Barnes. Although Barnes was acquitted of the charge of interfering with the duties of a conservation officer, he was convicted of second-degree wanton endangerment pursuant to Kentucky Revised Statute § 508.070. Section 508.070(1) states, "[a] person is guilty of wanton endangerment in the second degree when he wantonly engages in conduct which creates a substantial danger of physical injury to another person." The jury instructions given in Barnes's criminal trial state:

> [Y]ou will find the Defendant guilty of Second-Degree Wanton Endangerment under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
> A.    That in this county on or about September 28, 2002, and within 12 months before the finding of the Indictment herein, he pointed a firearm at Officer Tony Wright; AND
> B.    That he thereby wantonly created a substantial danger of physical injury to Officer Tony Wright.

J.A. at 66 (Jury Instructions). Because the jury found Barnes guilty of wanton endangerment according to this instruction,[4] he may not obtain relief pursuant to § 1983 if such relief would "imply the invalidity of [this] conviction." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).[5] Given this, we must accept that Barnes did point his gun at the officers and that he did create a danger to them in doing so. Pointing a gun at an officer in a manner that creates a substantial danger of injury clearly establishes probable cause for the charge of threatening or attempting to intimidate an officer in violation of § 150.090(6).[6] We therefore reverse the district court's denial of qualified immunity as to Barnes's claim of malicious prosecution.

### 3.  First Amendment Retaliation

Barnes asserts that because the defendants sought his indictment and arrest in retaliation for his criticism of them, their conduct violated his First Amendment rights. As a general principle, "[t]here can be no doubt that the freedom to express disagreement with state action, without fear of reprisal based on the expression, is unequivocally among the protections provided by the First Amendment." *McCurdy v. Montgomery County*, 240 F.3d 512, 520 (6th Cir. 2001). "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 462-63 (1987). The defendants do not contest the right to express such disagreement; they claim, though, that "Barnes['s] undisputed, unlawful conduct deprives him of a First Amendment claim." Appellants Br. at 50.

---

[4] Barnes was convicted of three counts of wanton endangerment in the second degree; he was found to have created a danger with regard to Wright, Gossett, and Jalena Barnes (his granddaughter). J.A. at 66-71 (Jury Instructions). The instructions given for each count required the jury to find that Barnes "pointed a firearm at Officer Tony Wright." J.A. at 66-71 (Jury Instructions).

[5] In *Heck*, the Supreme Court held as follows: "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487.

[6] "Whether there exists a probability of criminal activity is assessed under a reasonableness standard based on 'an examination of all facts and circumstances within an officer's knowledge at the time of an arrest.'" *Thacker*, 328 F.3d at 255 (internal quotation marks and citation omitted).

The defendants first argue that Barnes's conduct "falls within the 'fighting words' exception" to the First Amendment. Appellants Br. at 51. "Fighting words" are those words "'which by their very utterance inflict injury or tend to incite an immediate breach of the peace.'" *Greene v. Barber*, 310 F.3d 889, 896 (6th Cir. 2002) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)). The defendants state that Barnes "crossed [the] line" from protected conduct when he pulled out his gun, because "[p]ointing a gun at an officer is not protected conduct under the First Amendment." Appellants Br. at 52. However, this statement oversimplifies the facts as well as Barnes's claim. First, we note that Barnes's comment to the defendants *prior* to the gun incident is protected, regardless of how the defendants characterize his later statements. Barnes criticized the defendants before pulling out his gun, when he made a statement to the effect that the defendants had not performed their duties.[7] J.A. at 206 (Grand Jury Tr. at 2) (Gossett Test.). In addition, when Barnes criticized the defendants again, it was after the gun was put away. J.A. at 207 (Grand Jury Tr. at 3) (Gossett Test.). In fact, after Barnes showed Wright his gun permit, Wright apparently told Barnes "we'll talk all you want to." J.A. at 207 (Grand Jury Tr. at 3) (Gossett Test.). When the evidence is taken in the light most favorable to Barnes, it indicates that after Barnes put the gun back in his pocket the defendants no longer felt threatened by him.

When viewed as distinct from the gun incident, Barnes's comments do not rise to the level of fighting words. Wright explained that after the gun incident Barnes kept arguing with him about why the defendants did not do anything about the group that was drinking and firing guns near Barnes's family's property. J.A. at 198 (Grand Jury Tr. at 7) (Wright Test.). Gossett testified that Barnes "seemed to get . . . really irate," as evidenced by "using [foul] language, cussin', ranting and raving about the prior incident that they had had about the people on private property." J.A. at 207 (Grand Jury Tr. at 3) (Gossett Test.). The fighting-words doctrine "has become 'very limited.'" *Greene*, 310 F.3d at 896 (quoting *Sandul v. Larion*, 119 F.3d 1250, 1255 (6th Cir. 1997)). "Standards of decorum have changed dramatically since 1942, moreover, and indelicacy no longer places speech beyond the protection of the First Amendment." *Id*. In addition, police officers (and by analogy, conservation officers) "are expected to exercise greater restraint in their response than the average citizen." *Id*. Barnes's language may have been strong, but it is accorded the full protection of the First Amendment.

We next turn to the question of whether Barnes's unlawful conduct bars his retaliation claim, even if his speech is constitutionally protected. *McCurdy* addressed the question of whether "it was . . . clearly established that the First Amendment prohibited an officer from effectuating an otherwise valid arrest if that officer was motivated by a desire to retaliate against the arrestee's assertion of First Amendment rights." *McCurdy*, 240 F.3d at 520. We responded affirmatively, explaining that "[w]e have held that adverse state action motivated at least in part as a response to the exercise of the plaintiff's constitutional rights presents an actionable claim of retaliation." *Id*. (internal quotation marks omitted). In *Greene*, we held that "[t]he law is well established that '[a]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.'" *Greene*, 310 F.3d at 895 (quoting *Bloch v. Ribar*, 156 F.3d 673, 681-82 (6th Cir. 1998)). *Greene* and *McCurdy* both relied upon the Supreme Court's decision in *Mount Healthy City School District Board of Education v.*

---

[7]Wright described the exchange prior to the gun incident as follows:
> And uh, when they pulled up and stopped [Barnes] got off, put his hands in his pockets and walked up to the driver's door of my truck. And just give[s] me this real strange look. Said officer are you on duty today? And since we were both in uniform, in a marked vehicle I felt like it was a stupid question, but I said yes sir I am. Doesn't it look like it? And uh, he said, I've seen you look like this before and you wouldn't, when you weren't on duty.

J.A. at 194 (Grand Jury Tr. at 3) (Wright Test.). Gossett described Barnes's statement slightly differently: "[Barnes] said, well I saw you dress like this before, I believe's what he said, and you wouldn't, you didn't do anything then and I don't suppose you're going to do anything now." J.A. at 206 (Grand Jury Tr. at 2) (Gossett Test.).

*Doyle*, 429 U.S. 274 (1977), in which "a unanimous Court held that where constitutionally protected speech is 'a "motivating factor"' in governmental action adverse to the plaintiff, the adverse action is unconstitutional (assuming the requisite degree of seriousness) *unless the same action would have been taken 'even in the absence of the protected conduct.'*" *Greene*, 310 F.3d at 897 (quoting *Mt. Healthy*, 429 U.S. at 287). Thus, our precedents do not require Barnes to prove a lack of probable cause in order to go forward with his First Amendment retaliation claim.

The District of Columbia Circuit and the Tenth Circuit have also held that plaintiffs do not need to show a lack of probable cause in retaliatory-prosecution suits. *See Moore v. Hartman*, 388 F.3d 871, 879 (D.C. Cir. 2004); *Poole v. County of Otero*, 271 F.3d 955, 961 (10th Cir. 2001). *Moore* also relied on the Supreme Court's decision in *Mount Healthy* for its conclusion, while also noting that "the criminal context . . . involves considerations of prosecutorial discretion absent in a school employment decision." *Moore*, 388 F.3d at 879. In *Poole*, the Tenth Circuit stated, "[t]he propriety of charging Mr. Poole in light of his conduct during the pursuit is not relevant to his First Amendment claim." *Poole*, 271 F.3d at 961. Other circuits, however, do require that plaintiffs prove that there was no probable cause for the underlying prosecution. *See Wood v. Kesler*, 323 F.3d 872, 883 (11th Cir.), *cert. denied*, 540 U.S. 879 (2003); *Keenan v. Tejeda*, 290 F.3d 252, 260 (5th Cir. 2002); *Mozzochi v. Borden*, 959 F.2d 1174, 1179-80 (2d Cir. 1992). The Fifth Circuit explained that plaintiffs alleging First Amendment retaliation claims must "prove the common-law elements of malicious prosecution, including the absence of probable cause to prosecute." *Keenan*, 290 F.3d at 260.

The Supreme Court granted certiorari in *Moore* to resolve this split amongst the circuits, and while this case was pending on appeal the Court recently held that "want of probable cause must be alleged and proven" by a plaintiff bringing a § 1983 or *Bivens* suit for retaliatory prosecution. *Hartman v. Moore*, 126 S. Ct. 1695 (2006). The Court offered two main rationales for its holding: the issue of probable cause will likely be relevant in "any retaliatory-prosecution case," *id.* at 1704, and "the requisite causation between the defendant's retaliatory animus and the plaintiff's injury is usually more complex than it is in other retaliation cases," *id.* As to the former, the Court explained that retaliatory-prosecution cases are unique in that "there will always be a distinct body of highly valuable circumstantial evidence available and apt to prove or disprove retaliatory causation, namely evidence showing whether there was or was not probable cause to bring the criminal charge." *Id.* Thus, the issue of probable cause will necessarily have "powerful evidentiary significance." *Id.* With regard to the issue of causation, the Court emphasized that the § 1983 or *Bivens* action is brought against an official who "may have influenced the prosecutorial decision but did not himself make it" rather than against the prosecutor herself.[8] *Id.* at 1705. The Court explained that:

> Some sort of allegation . . . is needed both to bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action, and to address the presumption of prosecutorial regularity. And at the trial stage, some evidence must link the allegedly retaliatory official to a prosecutor whose action has injured the plaintiff. The connection, to be alleged and shown, is the absence of probable cause.

*Id.* at 1706. In conclusion, the Court stated, "[b]ecause showing an absence of probable cause will have high probative force, and can be made mandatory with little or no added cost, it makes sense to require such a showing as an element of a plaintiff's case, and we hold that it must be pleaded and proven." *Id.* at 1707.

---

[8]A prosecutor "is absolutely immune from liability for the decision to prosecute." *Hartman*, 126 S. Ct. at 1704 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)). The prosecutor's absolute immunity does not extend to "conduct taken in an investigatory capacity." *Id.* at 1705 n.8.

The concerns regarding the intervening actions of a prosecutor do not apply in this case, because the officers themselves initiated the grand jury proceedings against Barnes. However, in its analysis, *Hartman* appears to acknowledge that its rule sweeps broadly; the Court noted that causation in retaliatory-prosecution cases is "*usually* more complex than it is in other retaliation cases." *Id*. at 1704 (emphasis added). Regardless of the reasoning, it is clear that the *Hartman* rule modifies our holdings in *McCurdy* and *Greene* and applies in this case. As discussed above with regard to Barnes's malicious-prosecution claim, the defendants had probable cause to seek an indictment and to arrest Barnes on each of the criminal charges in this case. Barnes's First Amendment retaliation claim accordingly fails as a matter of law, and we reverse the district court's denial of qualified immunity to the officers on this issue.

## D. Res Judicata, Collateral Estoppel, and *Rooker-Feldman*

The defendants' arguments with regard to the issues of res judicata, collateral estoppel, and the *Rooker-Feldman* doctrine all have to do with the effect of Barnes's criminal conviction in the federal-court proceedings. The defendants assert that the district court was not permitted to find there to be a factual dispute as to whether Barnes pulled a gun out in a threatening manner, because such a finding directly contradicts the state-court conviction; the defendants also state that Barnes is not permitted to contradict the criminal conviction in his arguments against the defendants' entitlement to qualified immunity. Appellants Br. at 34. The defendants' rationales are as follows: an argument based upon the alleged factual dispute fails to give effect to the judgment as required by the Full Faith and Credit Act (28 U.S.C. § 1738), it involves relitigating issues that could have been raised in the criminal trial, and it would imply that the state-court judgment was incorrect. Appellants Br. at 34-37.

Our holding that the defendants are entitled to qualified immunity as to the malicious-prosecution claim and the retaliation claim is premised upon Barnes's failure to demonstrate a lack of probable cause for the charge of interference with a conservation officer. The probable-cause determination is in turn based in part on the fact that Barnes was convicted of second-degree wanton endangerment, specifically for pointing a gun at Wright. J.A. at 63-66 (Jury Instructions). Because we have considered Barnes's criminal conviction in our analysis of the defendants' claims regarding qualified immunity, we do not need to address the issues of res judicata, collateral estoppel, and the *Rooker-Feldman* doctrine.

## III.  CONCLUSION

For the reasons discussed above, we **REVERSE** the district court's denial of qualified immunity to the defendants on the malicious-prosecution claim and the retaliation claim. Because we hold that the defendants are entitled to qualified immunity, we have no occasion to address the absolute-immunity claims. We **REMAND** for further proceedings consistent with this opinion.