NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0306n.06

Nos. 14-3345/3388

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ANTHONY CASTELVETERE, | ) | **FILED** |
| | ) | Apr 28, 2015 |
| Plaintiff-Appellant/Cross-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| and | ) | |
| | ) | |
| KIM CASTELVETERE and SAFETY SERVICE ATTIRE, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| PHIL MESSER and CITY OF MANSFIELD, OHIO, | ) | |
| | ) | |
| Defendants-Appellees/Cross-Appellants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN DOES 1-4, | ) | |
| | ) | |
| Defendants. | ) | |

BEFORE: DAUGHTRY, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

After plaintiff Anthony Castelvetere was terminated and pleaded guilty to several misdemeanors arising from his official misconduct while employed by the State of Ohio, he, his wife Kim Castelvetere, and their business, Safety Service Attire, filed this claim, alleging that defendant Phil Messer's actions caused the investigation leading to Anthony's termination and

conviction. Plaintiffs claimed that Messer placed an anonymous phone call alerting officials to Anthony's misconduct in retaliation for Anthony exercising his free speech rights. Plaintiffs asserted that Messer's alleged actions resulted in a violation of Anthony's free speech and due process rights. They also alleged a number of state-law claims. The district court granted summary judgment to Messer and the City of Mansfield on the federal claims and, exercising its discretion under 28 U.S.C. § 1367(c), dismissed *sua sponte* the state-law claims on jurisdictional grounds. Anthony now appeals, and Messer and the City cross-appeal. For the reasons set forth below, we affirm.

I.

From 2003 until 2011, Anthony was employed by the State of Ohio as a Fire Marshal. In this role, Anthony was required to inspect buildings and enforce fire codes across several Ohio counties. In 2005, Anthony and Kim founded a business in Mansfield called Safety Service Attire ("SSA"), which sold uniforms and equipment used by local police and fire departments. One of SSA's clients was the Mansfield fire department; however, SSA did very little business with the Mansfield police department.

Anthony and Kim had multiple meetings with officials from the City of Mansfield to inquire as to why the City's police department bought its uniforms from a different uniform company, Richland Uniform. Anthony and Kim repeatedly complained to Messer, the City of Mansfield's Chief of Police, about SSA not receiving the police department's business.

On August 4, 2008, Anthony and Kim attended a Mansfield City Council meeting, at which Messer was present. There, they publicly complained that they believed Messer was "pushing business away" from SSA to Richland Uniform. On August 7, 2008, someone anonymously called the office of the Ohio Inspector General ("OIG"). The anonymous call was

received by defendant James Wernecke, a captain with the Ohio Highway Patrol who was working for the OIG at the time. According to Wernecke, the caller accused Anthony of conducting private business on state time using state equipment; specifically, the caller accused Anthony of soliciting business for SSA while visiting local fire departments in his role as a fire inspector. The caller also accused Anthony of doing work for his second job at Mansfield Motor Speedway while on state time.

The identity of the anonymous caller has not been established. However, Anthony believes that it was Messer retaliating against Anthony and Kim for their complaints at the city council meeting. The basis for this belief is that, according to Anthony, Wernecke and Messer are friends, and the timing of the anonymous phone call was mere days after his complaint at the city council meeting.

In any event, the anonymous phone call prompted Wernecke to begin a criminal investigation into Anthony's activities by emailing a report of the anonymous phone call to others in the OIG. The investigation resulted in criminal charges; on October 21, 2010, an Ohio grand jury indicted Anthony with multiple felony offenses, including theft in office, records tampering, and theft of a motor vehicle. Ultimately, Anthony pleaded guilty to misdemeanor offenses, including dereliction of duty and unauthorized use of a motor vehicle. On August 12, 2011, Anthony was terminated from the State Fire Marshal's office.

Plaintiffs filed a seven-count complaint in the district court on October 1, 2012, and Anthony filed an amended complaint on January 24, 2013. The amended complaint alleged six counts. Counts One through Four all sought relief under 42 U.S.C. § 1983. Count One alleged that Messer placed the anonymous phone call to the OIG in retaliation for Anthony's speech at the city council meeting; Anthony thus alleged that Messer violated his First Amendment rights.

Count Two alleged that Messer had the power to set policy for the City of Mansfield, and that therefore, by placing the anonymous phone call to the OIG, the City of Mansfield violated Anthony's First Amendment rights. Count Three alleged that Messer and the City violated Anthony's Fourteenth Amendment due process rights. Count Four alleged that Messer, Wernecke, and four John Doe defendants conspired to deprive Anthony of his constitutional rights. Counts Five and Six both raised state-law claims. Count Five alleged that Messer's conduct tortiously interfered with Anthony's employment relations, as Messer's alleged conduct directly led to Anthony's termination. Count Six alleged that Messer, Wernecke, and the John Doe defendants engaged in a civil conspiracy to cause Anthony's termination.

Wernecke filed a motion to dismiss the complaint as to him, alleging that Count Four was untimely or insufficiently pleaded, and that Count Six failed for lack of subject-matter jurisdiction. Anthony never responded to this motion.

Messer and the City filed a motion for summary judgment. As for the claims under § 1983, defendants argued that, even assuming it was Messer who made the anonymous phone call, Messer was entitled to qualified immunity from suit. With respect to the remaining state-law claims, defendants argued primarily that those claims were barred by the applicable statute of limitations, but also argued that those claims failed on their merits. Anthony opposed the motion.

After reviewing the report and recommendation of the magistrate judge, the district court ruled on the parties' motions on March 12, 2014. Initially, the court granted Wernecke's motion to dismiss for lack of prosecution by Anthony. The court also dismissed the claim against the John Doe defendants, noting that it had previously ordered Anthony to identify those defendants, but Anthony failed to comply with that order.

The district court then turned to Messer's and the City's motion for summary judgment. The court noted that Anthony did not object to the magistrate judge's recommendation that summary judgment be granted to Messer on Counts Three and Four, and granted the motion. As for Counts One and Two, the district court similarly found that Anthony's claims as to Messer were barred by qualified immunity. The district court also granted summary judgment to the City on the First Amendment claim.

The district court agreed with the magistrate judge's conclusion that Anthony's state-law claims were not time-barred. However, because the district court granted summary judgment on Anthony's federal claims, the district court declined to exercise supplemental jurisdiction over the remaining state-law claims and dismissed them under 28 U.S.C. § 1367(c).

Anthony now appeals the district court's grant of summary judgment to Messer and the City as to his First Amendment retaliation and Fourteenth Amendment due process claims. Messer and the City cross-appeal the district court's conclusion that Anthony's state-law claims are not time-barred.

## II.

"We review a district court's grant of summary judgment on the basis of qualified immunity *de novo.*" *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014). "Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 526 (6th Cir. 2014) (citation omitted).

We review for an abuse of discretion a district court's decision to decline to exercise supplemental jurisdiction over state-law claims after dismissing all federal claims. *Mich. Corr.*

*Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 908 (6th Cir. 2014) (citing *Bright v. Gallia Cnty.*, 753 F.3d 639, 659 (6th Cir. 2014)).

III.

We turn first to Anthony's appeal. Anthony argues that "the qualified immunity defense is unavailable when the defendant state actor claims he had nothing to do with the action alleged by plaintiff." Here, according to Anthony, the only defense raised by Messer and the City was "I didn't do it," which has no bearing on whether Messer is entitled to qualified immunity. We disagree.

Anthony misconstrues the record. Although Anthony is correct that part of Messer's and the City's argument in the district court was to note that there was no evidence indicating that Messer made the anonymous phone call, that was not the totality of their argument. Indeed, Messer and the City also argued that "even construing the evidence to conclude he did make that phone call, Messer is entitled to qualified immunity" and offered arguments as to why this is so.

Regardless, we agree with the district court that Messer is entitled to qualified immunity. The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation and quotation marks omitted).

> We follow a three-step analysis when reviewing a district court's decision concerning qualified immunity. First, we evaluate whether the facts demonstrate that a constitutional violation has occurred. Second, we determine whether the violation involved a clearly-established constitutional right of which a reasonable person would have known. Third, we consider whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Gaspers v. Ohio Dep't of Youth Servs.*, 648 F.3d 400, 412 (6th Cir. 2011) (internal citations and quotation marks omitted). "Qualified immunity gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) (citation and internal quotation marks omitted). Thus, in order to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

We first address Anthony's retaliation claim.

> In order to establish retaliation for engaging in constitutionally protected activity, a plaintiff must prove the following elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated . . . by the plaintiff's protected conduct.

*Sowards v. Loudon Cnty., Tenn.*, 203 F.3d 426, 431 (6th Cir. 2000) (citation and internal quotation marks omitted). Here, we agree with the district court that our precedent in *Barnes v. Wright*, 449 F.3d 709 (6th Cir. 2006), resolves this case. In *Barnes*, the plaintiff had an altercation with the defendants, who were state Department of Fish and Wildlife officers, in which he criticized them for failing to adequately perform their duties, but in which he also removed a gun from his pocket. *Id.* at 712. The officers initiated grand jury proceedings against the plaintiff, and the grand jury indicted the plaintiff on several felony counts. *Id.* The plaintiff sued the officers, claiming—as Anthony does here—that the officers "sought his indictment and arrest in retaliation for his criticism of them" in violation of his First Amendment rights. *Id.* at 717.

We held that the plaintiff's free speech retaliation claim failed as a matter of law. *Id*. at 720. We noted that the Supreme Court, in *Hartman v. Moore*, 547 U.S. 250 (2006), held that "'want of probable cause must be alleged and proven' by a plaintiff bringing a § 1983 . . . suit for retaliatory prosecution." *Id*. at 719. The Supreme Court, in *Hartman*, reasoned that the existence of probable cause was essential to the causation element of a retaliation claim. 547 U.S. at 263 ("[S]ome evidence must link the allegedly retaliatory official to a [government official] whose action has injured the plaintiff. The connection, to be alleged and shown, is the absence of probable cause."). Thus, in *Barnes*, we held that, because the plaintiff was indicted and ultimately convicted, he could not establish that his prosecution was not supported by probable cause, and therefore could not show causation for purposes of his § 1983 claim. *See Barnes*, 449 F.3d at 720.

The same result is warranted here. The fact that Anthony was ultimately charged and convicted of crimes arising from the allegations contained in the anonymous phone call is fatal to his § 1983 claim. That is because the existence of probable cause supporting the indictment in his criminal case makes it impossible for him to establish that his prosecution was caused by the anonymous phone call. Therefore, because Anthony has failed to establish an essential element of a retaliation claim, *see Sowards*, 203 F.3d at 431, we cannot conclude that a constitutional violation occurred for purposes of our qualified immunity analysis. *See Gaspers,* 648 F.3d at 412. In other words, because Anthony's retaliation claim fails as a matter of law, Messer is entitled to qualified immunity.

We next turn to Anthony's due process claim. Substantive due process "protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from

government actions that shock the conscience." *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (citation and internal quotation marks omitted). On appeal, Anthony simply asserts that "[a] government official's retaliatory conduct shocks the conscience when it is motivated not by probable cause but by someone's exercise of First Amendment rights," yet fails to cite a single authority in support of that proposition. Anthony has thus abandoned this issue. *See United States v. Williams*, 544 F.3d 683, 690 (6th Cir. 2008) (an appellant who "fail[s] to develop or support his argument with any legal authority" has abandoned review of the issue).[1]

Finally, we address Anthony's claims against the City itself. A municipality, as opposed to an individual government official, can be liable under § 1983 "*only if* the plaintiff can demonstrate that his civil rights have been violated as a direct result of that municipality's policy or custom." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)) (emphasis added). Although the City of Mansfield was named as a defendant, Anthony failed to identify in the district court any policy or custom of the City that resulted in a violation of his rights. And, on appeal, he does not address municipal liability at all, instead focusing exclusively on the issue of qualified immunity as to Messer. Thus, Anthony has abandoned appellate review of the issue of the City's liability. *See Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) (where an appellant "wholly fails to address [an] issue in [his] appellate brief," he has abandoned appellate review of the issue).

---

[1] Even if Anthony had not abandoned this issue, we would still conclude that he is not entitled to relief. Plaintiff does not deny that the indictment against him was supported by probable cause; indeed, he pleaded guilty to charges against him. And, the investigation against him was conducted by an independent agency, not Messer. Under these circumstances, we would not find a substantive due process violation in any event.

Having resolved Anthony's issues on appeal, we now turn to Messer and the City's cross-appeal. As noted above, the district court dismissed Anthony's state-law claims pursuant to the discretion granted to it by 28 U.S.C. § 1367(c). Messer and the City do not address the jurisdictional question at all; instead, they only address the question of whether Anthony's state-law claims are time-barred. However, because the district court declined to exercise supplemental jurisdiction over the state-law claims and dismissed them, we must consider whether the district court erred by doing so. In light of the fact that Messer and the City offer no reason to disturb the district court's dismissal of the state-law claims, and the fact that generally "[w]hen all federal claims are dismissed . . . the balance of considerations usually will point to dismissing the state law claims," *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996), we cannot conclude that the district court abused its discretion by dismissing Anthony's state-law claims. Because these claims were, and remain, dismissed on jurisdictional grounds, we decline to address whether they are time-barred.

IV.

For these reasons, we affirm the judgment of the district court.