Randy L. MILLER; James E. Lehman, Jr.; Michele E. Ward–Tackett; David M. Graham; and Todd E. Haines, Plaintiffs–Appellants,

v.

Randall MEYER; State of Ohio Office of the Inspector General; Office of Brown County Prosecutor; Jessica A. Little; James Zehringer; Ohio Department of Natural Resources; Anthony J. Celebrezze, III; Ronald E. Nichols; Sean D. Logan; and Thomas Charles, Defendants–Appellees.

No. 15–3702.

United States Court of Appeals, Sixth Circuit.

March 21, 2016.

BEFORE: COLE, Chief Judge; MERRITT and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiffs, a group of current and former employees of the Ohio Department of Natural Resources (ODNR), appeal the district court's grant of summary judgment in favor of defendants Jessica Little, the prosecuting attorney for Brown County, Ohio, and Ronald Nichols, a deputy inves-

tigator for the Ohio Inspector General (OIG). The gravamen of plaintiffs' complaint is that defendants engaged in malicious prosecution by "fabricating" evidence related to the ODNR's investigation of wrongdoing by wildlife officer Allen Wright, plaintiffs' former colleague and a non-party to this litigation. They allege Little and Nichols presented this false evidence to the Ohio grand jury that returned indictments against them.

However, plaintiffs never proved these allegations. They discovered no evidence to rebut the validity of the indictments, which conclusively establish probable cause and negate the suggestion of malicious prosecution. Accordingly, we affirm the district court's judgment.

## I.

The following facts from the state criminal case against plaintiffs provide the relevant background:

At all relevant times, [plaintiffs] were five upper-level employees of [the] ODNR's Division of Wildlife ("DOW"): Division Chief David Graham, Assistant Chief Randy Miller, Human Resource Manager Michele Ward–Tackett, Law Enforcement Executive Administrator James Lehman, and District Manager Todd Haines.

In September 2009, a confidential informant contacted the OIG to allege that Brown County DOW wildlife officer Allan Wright had engaged in misconduct [in 2006].... According to the informant, Wright assisted his nonresident friend, a South Carolina wildlife officer, in obtaining an Ohio-resident hunting license by allowing him to list Wright's home address as his own. This allowed Wright's friend to pay a resident license fee of $19 instead of the nonresident license fee of $125.

The OIG asked ODNR Director Sean Logan to investigate the alleged 2006 misconduct involving Wright and to prepare a report. The following month, Logan responded that the DOW had already completed an investigation in August 2008. Dissatisfied with the DOW investigation, the OIG assigned Deputy Inspector Ron Nichols to investigate. Nichols interviewed [plaintiffs]—the DOW personnel involved in the Wright investigation—at different times between December 22, 2009, and February 1, 2010....

During the interviews, [plaintiffs] revealed that consistent with reciprocal practices in other states, prior practice within the DOW allowed wildlife officers from other states to obtain Ohio-resident hunting licenses as a way to encourage interstate networking and cooperation, although there are some discrepancies between the [plaintiffs'] statements as to when the practice began and when it ended. In March and October 2008, ... Graham issued memoranda reminding division employees about the need to purchase out-of-state licenses; the October memorandum expressly prohibited DOW employees from accepting free or discounted licenses in other states (even if those other states allowed it) and from permitting nonresident friends to obtain free or discounted licenses in Ohio.

[Plaintiffs] told Nichols that after learning that Wright had allowed an out-of-state wildlife officer to use Wright's home address, they had decided to handle Wright's misconduct administratively rather than report it to the ODNR director as a possible criminal violation. Collectively, [plaintiffs] determined that Wright's misconduct fell into the ODNR disciplinary-guidelines category of "failure of good behavior" and decided that a

verbal reprimand was the proper sanction.

During his questioning, Nichols asked each [plaintiff] whether Wright's falsification of the license was a crime and why they, collectively, had decided not to pursue a criminal investigation. He asked several of the [plaintiffs] how they could have disciplined Wright administratively for a 2006 violation of an internal prohibition that did not exist until Graham's 2008 memo. And he suggested to … Haines and Graham that perhaps [plaintiffs] had decided to issue a verbal reprimand for this nonexistent violation under the catchall category of "failure of good behavior" because then Wright could not file a grievance over it and no one would ever know about it. Each [plaintiff] testified at length, however, about the various factors that went into his or her decision-making, including the DOW's past practice of allowing nonresident wildlife officers to obtain resident licenses, Wright's history and tenure at the ODNR, and Wright's use of his own home address, which indicated that he was not trying to hide anything.

In March 2010, the OIG issued an investigative report. The report concluded that Wright had committed wrongdoing by allowing an out-of-state wildlife officer to obtain an Ohio-resident hunting license using Wright's home address. Wright's excuse for doing so, according to the report, was that it was common practice in southwest Ohio to allow out-of-state wildlife officers to obtain resident licenses.

The report also concluded that [plaintiffs] had improperly failed to report Wright's criminal conduct to the ODNR director or chief legal counsel, as required by the policies of the governor and the ODNR. The report stated that [plaintiffs] had not verified whether Wright had been adhering to a common practice that his supervisors were aware of, as Wright claimed, and that [plaintiffs] used the alleged practice as an "excuse to disregard the criminal violation." The OIG forwarded the report to the Brown County prosecuting attorney [Jessica Little].

In April 2010, a Brown County grand jury indicted each [plaintiff] on one count of obstructing justice and one count of complicity in obstructing justice, each a fifth-degree felony.

*State v. Graham,* 136 Ohio St.3d 125, 991 N.E.2d 1116, 1118–19 (2013).

Upon being indicted, plaintiffs moved to suppress the statements they made to Nichols as unlawfully coerced under the Supreme Court's decision in *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). The trial court granted their motions, adding that if Little presented the statements to the grand jury, the case against plaintiffs should be dismissed. Following a reversal on appeal by the Ohio Court of Appeals, the Ohio Supreme Court reinstated the trial court's decision, holding plaintiffs' statements should be suppressed. *See Graham,* 991 N.E.2d at 1121–24. On remand, Little moved to dismiss the charges against plaintiffs without prejudice, and the trial court granted the motion.

Thereafter, plaintiffs filed the present action against defendants and others involved in the criminal case. Plaintiffs alleged that Nichols, working in conjunction with Ohio Inspector General Thomas Charles, falsified evidence against them. They accused Little of assisting with the "manufacturing" of evidence and using that evidence to secure their indictments. The district court granted defendants' motions to dismiss the majority of plaintiffs' claims under Federal Rule of Civil Proce-

dure 12(b)(6). *Miller v. Meyer*, No. 2:14–cv–101, 2014 WL 5448348, at *1–12 (S.D.Ohio Oct. 23, 2014).

After a period of discovery, Nichols, Charles, and Little moved for summary judgment on plaintiffs' two remaining claims: (1) a § 1983 action for malicious prosecution; and (2) a claim for conspiracy to commit malicious prosecution in violation of their Fourth Amendment rights. The district court granted defendants' motions on both claims. *Miller v. Meyer*, No. 2:14–cv–101, 2015 WL 3537143, at *1 (S.D.Ohio June 4, 2015). Plaintiffs appeal the court's decision only as it relates to Little and Nichols.

## II.

### A.

As an initial matter, plaintiffs challenge two discovery orders entered by the magistrate judge prior to summary judgment. The first prohibited plaintiffs from questioning Little about her "decision to prosecute [and] the presentation of evidence to the grand jury." The second quashed plaintiffs' subpoenas requesting production of "all grand jury documents, papers, and transcripts." These orders limited (but did not preclude, as detailed below,) plaintiffs' ability to develop a record of the evidence presented to the grand jury.

Both orders stated that either party could move for reconsideration before the district court specifying their objections to the orders pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a). Plaintiffs did not object to either one. "In the interest of judicial economy ... a party *must* file timely objections [to a magistrate's order] with the district court to avoid waiving appellate review." *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987) (citing *United States v. Walters*,

638 F.2d 947, 949–50 (6th Cir.1981)). Having failed to do so here, plaintiffs waived their right to appeal the discovery orders. *Id.*; *see also Board of Trustees v. Moore*, 800 F.3d 214, 223 (6th Cir.2015).

### B.

We review the district court's grant of summary judgment de novo. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013). Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(a). Although we view the evidence in a light most favorable to the nonmovant, *Rogers*, 737 F.3d at 1030, "[t]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

To succeed on a Fourth Amendment malicious prosecution claim, plaintiffs must demonstrate that: (1) defendants. made, influenced, or participated in the decision to prosecute them; (2) there was no probable cause; (3) plaintiffs suffered a deprivation of liberty separate from the initial arrest as a consequence of the legal proceedings; and (4) the criminal proceeding was resolved in their favor. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010).

As the district court saw it, "[t]he crux" of plaintiffs' claim against Nichols "is that he manufactured a false investigative report." *Miller*, 2015 WL 3537143, at *5 (internal quotation marks omitted). The district court implicitly assumed the Ohio grand jury considered Nichols' report in deciding to indict plaintiffs: "without dem-

onstrating that the report is false, [p]laintiffs cannot establish that the prosecution against them lacked probable cause." *Id.* After a thorough examination of plaintiffs' challenges to the report, the court concluded plaintiffs "fail[ed] to establish that any portion of [it] is false." *Id.*

The district court granted Little summary judgment based on plaintiffs' inability to rebut Little's proofs showing that she did not "fabricate" evidence, or present false evidence to the grand jury—an act for which she enjoys absolute immunity in any event. *Id.* at \*4; *see Burns v. Reed,* 500 U.S. 478, 489–91, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991); *Spurlock v. Thompson,* 330 F.3d 791, 798 (6th Cir.2003).

While the district court's reasoning is sound, we conclude plaintiffs' case fails for a more fundamental reason: plaintiffs cannot demonstrate a lack of probable cause because they offer no proof of the evidence (whether false or not) submitted to the grand jury. *See Thornton v. Fed. Express Corp.,* 530 F.3d 451, 456 n. 2 (6th Cir.2008) (appellate courts may affirm summary judgment on other grounds).

In our circuit, "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Barnes v. Wright,* 449 F.3d 709, 716 (6th Cir.2006). To overcome their indictments, plaintiffs bear the burden of demonstrating that: (1) Little and Nichols supplied the grand jury with false evidence; and (2) probable cause to prosecute did not exist independent of the false evidence. *See Peet v. City of Detroit,* 502 F.3d 557, 566 (6th Cir.2007) (noting exception); *McKinley v. City of Mansfield,* 404 F.3d 418, 445 (6th Cir.2005) ("[I]f this court finds that there was probable cause to prosecute [the plaintiff], regardless of any alleged false statements . . ., then she cannot make out a malicious prosecution claim under the

Fourth Amendment.") (quoting *Darrah v. City of Oak Park,* 255 F.3d 301, 312 (6th Cir.2001) (alterations in original)).

Plaintiffs' claim is therefore viable only if: (1) Nichols did, in fact, "fabricate" the report; (2) Little submitted the report to the grand jury; and (3) the grand jury relied on the report to indict plaintiffs. *Peet,* 502 F.3d at 566. Yet plaintiffs cannot make this showing because they offer no proof to establish what Little presented to the grand jury—much less proof that she presented the report itself. For instance, plaintiffs state "Nichols' testimony and his substantially fabricated report were the only evidence submitted to the grand jury," without any record support. The same is true for their claim that Little interviewed favorable witnesses but did not present them to the grand jury. Plaintiffs may not discharge their evidentiary burden at summary judgment with unsupported allegations in their brief. Rather, to reach a jury, they "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citation and footnote omitted).

Plaintiffs complain that the magistrate judge's orders limited their discovery of the grand jury record. True enough. But plaintiffs had other avenues to this information. As the magistrate observed while granting Little's motion to quash, plaintiffs could have evaded the earlier order prohibiting them from questioning Little about the grand jury evidence by directing their questions to Nichols instead:

First, [plaintiffs] have had the opportunity in discovery to ask the witnesses what evidence Charles and Nichols communicated to Little. . . . If those witnesses say that Charles and/or Nichols told Little about the December 10, 2009 letter [that plaintiffs claim is exculpato-

ry] and accurately reported plaintiffs' investigation, findings, and actions regarding Wright's misconduct, then plaintiffs [would] have demonstrated that their interest in asking Charles and Nichols whether they provided the grand jurors with the OIG report and/or testified about that report outweighs the public's interest in grand jury secrecy. Similarly, they would have demonstrated that they could question the witnesses about whether Charles and Nichols provided the grand jury with or testified about the December 10 letter.

However, plaintiffs "failed to provide the [magistrate judge] with the December 10 letter or any [other] information" about the evidence presented to the grand jury, and equally fail to do so here. In his deposition, Nichols alluded to his appearance before the grand jury, but plaintiffs' counsel did not inquire about the substance of his testimony, or ask whether the investigative report was submitted into evidence. Thus, even if plaintiffs are correct to claim that Nichols' report included false information, they cannot prove that the grand jury "rel[ied] on [the report] *to establish probable cause.*" *Sykes,* 625 F.3d at 312 (quoting *Molnar v. Care House,* 359 Fed.Appx. 623, 627 (6th Cir.2009)).

It is not enough at summary judgment to argue that "[d]efendants would have had to manufacture evidence [and] provide false evidence" to achieve an indictment; plaintiffs must prove it. *See, e.g., Cook v. McPherson,* 273 Fed.Appx. 421, 423–24 (6th Cir.2008) (affirming summary judgment where the plaintiff "offer[ed] absolutely no evidence" to demonstrate that the defendants testified falsely before the grand jury). If the discovery orders inhibited plaintiffs' efforts in this regard, they should have objected. Absent the necessary evidence, they cannot now undermine the legitimacy of the grand jury's decision. The indictments are therefore dispositive proof of probable cause, and plaintiffs "ha[ve] no basis for [their] constitutional claim." *Barnes,* 449 F.3d at 716 (citation omitted).

Finally, because defendants did not commit malicious prosecution, they "necessarily ... cannot have conspired to engage in one." *Beckett v. Ford,* 384 Fed.Appx. 435, 457 (6th Cir.2010). The district court properly granted defendants summary judgment on both claims.

### III.

For these reasons, we affirm the judgment of the district court.

MERRITT, Circuit Judge, concurring.

In *Rehberg v. Paulk,* —— U.S. ——, 132 S.Ct. 1497, 1503–1505, 182 L.Ed.2d 593 (2012), actions by "prosecutors in their role as advocates" are normally immune from liability, as is the testimony of trial and grand jury witnesses "with respect to any claim based on the witness's testimony." Plaintiffs' malicious prosecution claims must fail against the prosecutor for asking the grand jury for the indictment on grounds of immunity. The same is true for the main complaining witness whose information was used to obtain the indictment. The indictment resulted from a combination of the prosecutor's action and the main complaining witness from the State Office of Inspector General whose testimony also brought about the indictment. In light of our system's well-established immunity doctrine covering these prosecutorial activities, I agree with the result reached by our court and the court below.