OPINION
KETHLEDGE, Circuit Judge.
Kenneth Haggard and Maryann Tomczyk filed this Bivens action against John Stevens, an investigator for the Federal Deposit Insurance Corporation. After they filed suit, Stevens died. The district court held that Stevens’s death extinguished the Bivens claim, and dismissed the suit. We agree with the district court and affirm.
I.
The plaintiffs are the sole shareholder and the Chairman, respectively, of Miami Valley Bank in Ohio. Both plaintiffs also own stock in a mortgage lender with which the bank had several loan agreements. In the spring of 2007, the FDIC began an investigation of the loan agreements. State and federal regulators eventually closed the bank and appointed the FDIC as a receiver. The FDIC purportedly halted its investigation, however, once an accounting expert confirmed that the loans were legal. The mortgage company then petitioned the receiver for $10 million that the bank owed the mortgage lender. In retaliation for the $10 million request, John Stevens allegedly prompted the FDIC to resume the investigation of the bank.
The plaintiffs thereafter filed this Bivens action against Stevens, alleging that the retaliatory investigation violated the First Amendment. See generally Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Stevens died after this lawsuit began. The plaintiffs argued that their Bivens action survived his death, regardless of whether their claim would survive under state law. In a carefully reasoned opinion, however, the district court held that state law controls the survivability of Bivens actions, subject to one exception not applicable *716 here. The court thus applied Ohio law, under which the death of Stevens extinguished the plaintiffs’ claims against him.
This appeal followed.
II.
A.
The plaintiffs read the Supreme Court’s opinion in Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), to require a uniform rule that Bivens claims always survive the death of either party to the suit. The Carlson plaintiff was the mother of a prisoner who died in prison from an asthma attack. Id. at 16 & n. 1, 100 S.Ct. 1468. She brought a Bivens action in federal court against the Director of the Federal Bureau of Prisons, alleging that prison officials had delayed treatment for her son’s attack, in violation of the Eighth Amendment. Id. The claim would not have survived her son’s death under Indiana law. Id. at 24, 100 S.Ct. 1468. But the Supreme Court held that the claim survived nonetheless, noting among other things that “ ‘uniform treatment’ ” of Bivens claims would promote “ ‘complete vindication of constitutional rights.’ ” Id. at 24, 100 S.Ct. 1468 (citation omitted).
The plaintiffs seize upon that language here in arguing for a rule that Bivens claims always survive the death of either party. But the Court’s holding in Carlson was not nearly so broad. The Court did say that a “uniform federal rule of survivorship” would help “redress the constitutional deprivation [t]here alleged.” Id. at 23, 100 S.Ct. 1468. The deprivation “[t]here alleged,” however, was one in which the defendant’s conduct “resulted] in death” — specifically the plaintiffs death. Id. at 24, 100 S.Ct. 1468 (citation omitted). We read the Court’s reference to a “uniform rule” to be limited to that kind of deprivation. As the Court explained, there is a good reason for a uniform rule of survivorship when the defendant kills the plaintiff: A rule extinguishing the plaintiffs claim with his death would allow the defendant to “know at the time he decided] to act” that he could not be sued, so long as he actually kills the victim. Id. at 25 n. 12, 100 S.Ct. 1468. But that rationale is limited to cases — like Carlson, but unlike this case — where the defendant causes the plaintiffs death.
Moreover, the Court expressly left “for another day” the question whether, in cases where a party dies through no fault of the other, federal law might “choose to incorporate state rules as a matter of convenience.” Id. at 24 n. 11, 100 S.Ct. 1468. The plaintiffs here read this reference as allowing incorporation of state law only when that law allows survival of a Bivens claim — which of course means that these claims would always survive the death of a party. But if that is what the Court meant in Carlson — that the claims always survive — they presumably would have said as much, rather than have us chase chickens round the barnyard so long as we never catch any. Cf. Robertson v. Wegmann, 436 U.S. 584, 593, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978). The plaintiffs’ reading of Carlson is implausible.
Moreover, the relevant law has shifted since the “heady days in which th[e] Court assumed common-law powers” to create the Bivens cause of action. Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 75, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) (Scalia, J., concurring). Specifically, the Supreme Court has since emphasized that the primary goal of Bivens is deterrence of unconstitutional conduct by federal officers, rather than compensation for violations that do occur. In Malesko, the Second Circuit extended Bivens liability, on compensatory grounds, to a private corporation that ran a halfway house for federal prisoners. See Malesko v. Corr. Servs. Corp., 229 F.3d 374, 380 (2d Cir.2000). *717 The Supreme Court reversed, flatly stating that “[t]he purpose of Bivens is to deter individual federal officers from committing constitutional violations.” 534 U.S. at 70, 122 S.Ct. 515. The Court then thrice repeated that deterrence is the “core” purpose of Bivens. Id. at 71, 74, 122 S.Ct. 515. Similarly, in F.D.I.C. v. Meyer, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), the Court said “the purpose of Bivens is to deter the officer.” Id. at 485, 114 S.Ct. 996 (emphasis omitted).
The plaintiffs’ uniform rule of survivor-ship would do virtually nothing to deter constitutional torts — because virtually nobody is more inclined to commit them based upon the prospect that the actor might die and thus obtain immunity from suit. Cf. Pietrowski v. Town of Dibble, 134 F.3d 1006, 1008 (10th Cir.1998). The plaintiffs’ proposed rule of survivability therefore does not advance Bivens’s core purpose; and thus we reject it.
B.
The plaintiffs also argue that their claims should survive under the federal common-law rule for the survivability of statutory causes of action. Under that rule, “remedial” claims — ie., claims to compensate the plaintiff — survive a party’s death, whereas “punitive” claims — ie., claims to punish the defendant — do not. See Murphy v. Household Fin. Corp., 560 F.2d 206, 208-09, 211 (6th Cir.1977); see also Ex parte Schreiber, 110 U.S. 76, 80, 3 S.Ct. 423, 28 L.Ed. 65 (1884). The plaintiffs ask us to apply this rule here, contending that their Bivens claim is remedial and thus should survive Stevens’s death.
But here again the plaintiffs’ argument is inconsistent with the Court’s analysis in Carlson. If the federal common law required survival of Bivens claims as remedial causes of action, then the Supreme Court could have saved itself a lot of analysis in Carlson simply by citing that rule. Yet the Court never mentioned it. The Court also predicted that, in some instances, state law would control survivorship questions — which would be untrue if the federal common-law rule always governed them. Under Carlson, therefore, we conclude that the survivorship of Bivens claims is not governed by the federal common law for the survival of statutory claims. Cf. Mallick v. Int’l Bhd. of Elec. Workers, 814 F.2d 674, 678 (D.C.Cir.1987) (treating federal common-law rules of survivorship as superannuated even for federal statutory claims).
That leaves the question of what does govern survivorship of Bivens claims when the defendant dies. Although survivorship of a Bivens claim is a question of federal law, see Carlson, 446 U.S. at 23, 100 S.Ct. 1468, federal courts routinely look to state law to fill in the gaps of federal law. See id. at 29, 100 S.Ct. 1468 (Powell, J., concurring) (“[Fjederal courts routinely refer to state law to fill the procedural gaps in national remedial schemes”); see also Critchlow v. First UNUM Life Ins. Co. of Am., 378 F.3d 246, 256 (2d Cir.2004); Steffes v. Stepan Co., 144 F.3d 1070, 1075 (7th Cir.1998).
This court already applies state law to decide another issue within the same genus as the one presented here — namely, how long Bivens claims survive after accrual. See Harris v. United States, 422 F.3d 322, 331 (6th Cir.2005) (holding that state law supplies the statute of limitations in Bivens actions). We see no reason to treat the issue here any differently. Moreover, as noted above, the Supreme Court itself has suggested that we look to state law to answer survivorship questions in cases where the defendant’s actions do not result in the plaintiffs death. We adopt that suggestion today.
*718 The plaintiffs here do not dispute that, if state law governs the survivability of their claim, the applicable state law is that of Ohio, the forum state. Cf. Jaco v. Bloechle, 739 F.2d 239, 243 (6th Cir.1984) (noting that the “forum state[’s]” survivor-ship rules are the default rules for § 1983). Nor do the'plaintiffs dispute that Ohio law extinguishes their claim.
The district court’s judgment is affirmed.