RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0005p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

AMY SANDERS,

*Plaintiff-Appellee,*

No. 15-6384

*v.*

LAMAR JONES,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 1:14-cv-01239—J. Daniel Breen, District Judge.

Argued:  October 18, 2016

Decided and Filed:  January 9, 2017

**Before:**  SUHRHEINRICH, ROGERS, and GRIFFIN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:**  Amanda S. Jordan, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellant.  Leanne Thorne, THORNE & THORNE, Lexington, Tennessee, for Appellee.  **ON BRIEF:**  Amanda S. Jordan, Michael C. Polovich, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellant.  Leanne Thorne, THORNE & THORNE, Lexington, Tennessee, for Appellee.

1

---
**OPINION**
---

SUHRHEINRICH, Circuit Judge.

**INTRODUCTION**

Defendant Lamar Jones ("Jones"), a police officer with the Decatur County Sheriff's Department, conducted a controlled buy of marijuana on May 22, 2013, through a confidential informant ("CI") as part of a county-wide drug–bust operation. Plaintiff Amy Sanders ("Sanders") alleges that Jones prepared a misleading police report and gave false grand jury testimony identifying Sanders as the person who sold the CI drugs. Based on these allegations, Sanders brought a § 1983 action against Jones for malicious prosecution in violation of the Fourth Amendment. Jones moved for summary judgment on the basis of absolute and qualified immunity, and the district court denied both defenses. Jones appeals that decision.

Jones's absolute immunity defense presents a question of first impression about how the Supreme Court's provision of absolute immunity for grand jury witnesses in *Rehberg v. Paulk*, 132 S. Ct. 1497 (2012), intersects with the Sixth Circuit's requirements for malicious prosecution claims where a grand jury indicted the plaintiff. The issue compels us to revisit the test applied in *Webb v. United States*, 789 F.3d 647 (6th Cir. 2015) and other Sixth Circuit cases requiring an indicted plaintiff to present evidence that the defendant provided false testimony to the grand jury. In light of *Rehberg*'s absolute immunity for false grand jury testimony, *Rehberg* precludes Sanders's malicious prosecution claim because she cannot rebut the indictment's presumption of probable cause without using Jones's grand jury testimony.

**II. BACKGROUND**

**A. Facts**

Jones is a police officer with the Decatur County Sheriff's Department. Jones began working as a member of the 24th Judicial District Drug Task Force ("DTF") in October 2012, with his operation located in Decatur County, Tennessee. DTF used confidential informants to

identify individuals willing to sell drugs and to purchase drugs from these individuals under video surveillance. In May 2013, DTF used a CI who identified Sanders as a drug seller. Jones became acquainted with this CI through Joel Pate ("Pate"), another DTF officer who had conducted an operation in Carroll County. Pate informed Jones that several other agencies recommended the CI as a good and credible source, and that the CI facilitated several convictions in Pate's DTF operation in Carroll County. The CI was from Memphis and did not have ties to Decatur County prior to moving to the area for the spring 2013 operation. DTF paid the CI in cash for each controlled buy. The CI had a criminal drug history, but was not currently under investigation for drug trafficking or manufacturing.

The CI's modus operandi was to make contact with suspected drug sellers, offer to purchase drugs from them, and ask to meet later to make the purchase. Through this procedure, the CI became acquainted with a woman he referred to as "Amy." The CI obtained this woman's cell phone number and, monitored by Jones, used the phone number to call her and arrange a controlled buy on May 22, 2013. The woman did not identify herself during the phone call. Jones did not attempt to run a search on the owner of the cell phone number. The phone number actually belonged to Amanda Ramey ("Ramey"), another target of the spring 2013 operation with whom Jones was familiar. Ramey was Sanders's roommate at the time of the relevant events.[1]

The CI, wired with a video camera, met the female suspect at the Decaturville City Park. Jones followed the CI from a distance. He observed a silver Monte Carlo pull into the park but did not see the person driving it or obtain the vehicle's license tag number. During the controlled buy, the suspect did not identify herself or provide any other information about herself. Jones knew, however, that Ramey drove a silver Monte Carlo and that Sanders drove a Ford Explorer. Jones also knew that Ramey and Sanders lived together, although he was not aware that they were sisters.

After the controlled buy, the CI gave Jones a description of the female suspect as short and petite with long black hair and tattoos. Jones asked around the Decatur County Sheriff's

---

[1]At oral argument, Plaintiff's counsel made clear that the two are not biological sisters. See Recording at 20:14.

Department if anyone knew a person matching that description. Deputy Ricky Inman ("Inman") told Jones that the description resembled Amy Sanders, with whom Inman was familiar. Jones retrieved Sanders's driver's license photograph and showed the CI the photo a couple of days after the controlled buy. The CI then identified Sanders as the person from whom he purchased marijuana. The CI reiterated his identification to Jones a few days before Jones appeared before the grand jury in September.

Having obtained the CI's identification and viewing the video of the controlled buy, Jones drew up a police report of the controlled buy and forwarded it to the district attorney's office. The narrative portion of the report related the following information:

> On 5/22/2013 at approximately 1512 hrs. Ci made contact by cell phone, (713-602-2593) with a white female by the name of Amy Sanders Patterson in an attempt to purchase 1 Oz. of marijuana. Amy agreed to sell the 1 oz. of marijuana to the Ci and meet him at the Coty Park in Decaturville across from Decaturville Elementary. At approximately 1528 hrs Ci meet [sic] with Amy who was driving a silver Monte Carlo and purchased the marijuana for 130.00. I then meet with the Ci. And took the marijuana into evidence.

The police report did not describe how the CI came to identify the female suspect as Amy Sanders. It also did not indicate that there was video—poor quality or otherwise—of the transaction. The parties agree that this police report, in tandem with the CI's identification, formed the basis for Sanders's indictment.

Jones did not discuss the report on Sanders with anyone from the district attorney's office until the morning of the grand jury, when he met with Assistant District Attorney Jim Williams ("Williams"). It is unclear whether Williams knew about or viewed the video of the controlled buy prior to convening the grand jury. Although a transcript of the grand jury proceedings are not in the record, Jones related the substance of his grand jury testimony during his deposition. Jones testified that his grand jury testimony consisted largely of his reading verbatim from his police report. Jones also testified that he described to the grand jury how the CI identified the suspect from her driver's license photo. Furthermore, he testified that Williams asked during the grand jury whether there was audio and video of the controlled drug purchase, and that Jones answered "yes." Jones conceded that he did not tell the grand jury that the quality of the video

recording was poor. According to Jones, the video quality was poor and "didn't show the faces clear enough" to make an identification.

However, during Jones's deposition, Jones viewed a screenshot[2] taken from the video of the controlled buy, and the following line of questioning took place:

> Q: As you sit here today, do you agree with me that, whether it be before or after this litigation began, the individual pictured in that video is not Amy Sanders?
>
> A: I agree with you.
>
> Q: And that video was within your control from the time it was made, from May 22nd, all the way up through the date of her indictment and beyond?
>
> A: Yes.
>
> Q: Okay.
>
> A: I agree with the picture that you see. That's what I agree with.
>
> Q: The screenshot?
>
> A: Yeah, the screenshot.
>
> Q: You agree that does not depict Amy Sanders?
>
> A: I agree that does not depict Amy Sanders.

A bit later on, Sanders's counsel asked:

> Q: And it is your testimony today that if you had looked at the screenshot that you now know about and that you've seen, that you could have told that it was not Amy Sanders. There would not have been an identification of Amy Sanders.
>
> A: The screenshot does not show it to be Amy Sanders.

And again, a bit later:

> Q: So if you had looked at the video and looked at the screenshot prior to the indictment, you would not have indicted Amy Sanders?
>
> A: I did look at the video.
>
> Q: Okay.
>
> A: I do agree that it was not—it don't look like Amy Sanders.

---

[2]Sanders's counsel did not introduce this screenshot as an exhibit. Thus, the screenshot itself is not in the record. In addition, neither party filed the video of the controlled buy into the record.

The grand jury returned a true bill against Sanders on September 17, 2013. A bench warrant was issued for Sanders's arrest. When Sanders learned that the police were looking for her, she turned herself into the Decaturville jail. She posted bond and was released. Later, the State dismissed the charges against her due to misidentification.

**B. Procedural History**

Sanders filed suit against Jones under 42 U.S.C. § 1983 for false arrest, false imprisonment, and malicious prosecution in violation of the Fourth and Fourteenth Amendments. She also raised Tennessee-law claims of false arrest and malicious prosecution. Jones brought a motion for summary judgment, arguing that he was entitled to absolute immunity and, in the alternative, qualified immunity. In response, Sanders abandoned her false arrest and imprisonment claims (both federal and state) but maintained that trial was warranted on her federal and state-law malicious prosecution claims.

The district court first denied Jones's absolute immunity defense in a footnote. While acknowledging that grand jury witnesses enjoy absolute immunity for their testimony under *Rehberg*, the district court reasoned that Jones's grand jury testimony did not automatically insulate him from Sanders's malicious prosecution claim because her claim was premised not only on Jones's grand jury testimony but also on his investigative conduct leading up to the grand jury. The district court concluded that Jones was not absolutely immune for acts committed in the course of his investigation.

The district court also rejected Jones's qualified immunity defense. Relying heavily on *Webb*, the district court held that in "a case of mistaken identity, the jury must determine if it was 'objectively reasonable' for the officer to believe that the arrested individual was the person sought." (citing *Webb*, 789 F.3d at 663). The district court concluded that because Jones himself acknowledged that the person depicted in the screenshot from the video footage did not resemble Sanders, a jury could conclude that he knowingly or recklessly misrepresented the identity of the person who sold the CI drugs. The district court further held that Jones could not rely solely on the CI's identification because "Jones had not provided substantial supporting evidence that the CI was shown to be reliable." Although the district court had concluded that Jones's grand jury

testimony was absolutely immune, it confusingly concluded that "a genuine issue of material fact exists as to whether Defendant recklessly provided false testimony to the grand jury as to the identity of the suspect."[3]

## III. STANDARDS OF REVIEW

The denial of a motion for summary judgment is reviewed de novo. *Moldowan v. City of Warren*, 578 F.3d 351, 373 (6th Cir. 2009). The denial of absolute immunity and qualified immunity are also legal questions reviewed de novo. *Id.* at 374.

## IV. ANALYSIS

### A. Jurisdiction

This Court has jurisdiction over denials of absolute immunity before a final judgment in the context of a malicious prosecution suit against a police officer. *Moldowan,* 578 F.3d at 371.

Sanders contends that the panel lacks jurisdiction over Jones's absolute immunity defense because Jones did not specifically designate absolute immunity as an issue in his notice of appeal, whereas he did specifically invoke the qualified immunity issue. Jones's notice of appeal reads:

> Notice is hereby given that Lamar Jones, hereby appeals to the United States Court of Appeals for the Sixth Circuit from the November 24, 2015 Order of the United States District Court for the Western District of Tennessee granting in part and denying in part defendant's motion for summary judgment. [D.E. #33]. Defendant appeals the court's denial of qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

Federal Rule of Appellate Procedure 3(c) imposes a jurisdictional requirement that the notice of appeal "designate the judgment, order, or part thereof being appealed." Fed. R. App. 3(c)(1)(B); *see United States v. Universal Mgmt. Servs., Inc.*, 191 F.3d 750, 756 (6th Cir. 1999). "If an appellant . . . chooses to designate specific determinations in his notice of appeal—rather than simply appealing from the entire judgment—only the specified issues may be raised on appeal." *McLaurin v. Fischer*, 768 F.2d 98, 102 (6th Cir. 1985). That being said, technical

---

[3]The district court declined to exercise supplemental jurisdiction over Sanders's Tennessee malicious prosecution claim.

errors in the notice of appeal that do not implicate Rule 3(c)'s jurisdictional requirements should be treated as harmless absent a showing of prejudice by the appellee. *See id.; see also Universal Mgmt. Servs.,* 191 F.3d at 756 (describing Rule 3(c) as a jurisdictional rule that may not be waived by the court).

The district court's November 24, 2015 order denied both Jones's defense of absolute immunity and his defense of qualified immunity. Therefore, Jones's notice of appeal could be read as either appealing from the entire November 24 order or only from the portion of the order addressing his qualified immunity defense. We have held that a similarly ambiguous notice of appeal was not limited to a singled-out aspect of the designated order. *United States v. Pickett*, 941 F.2d 411, 415 n.3 (6th Cir. 1991) (finding jurisdiction over the entire appeal where the notice of appeal stated that the defendant appealed "from the final judgment" but also stated that the appeal "is based on the trial court's application of the Federal Sentencing Guidelines"). We reach the same conclusion here. First, Jones's notice of appeal satisfies Rule 3(c)'s jurisdictional mandate by stating that it appeals from the November 24, 2015 order, which undeniably addressed and decided Jones's absolute immunity defense. Second, Sanders responded to the merits of Jones's absolute immunity argument in full in her response brief, and she has not indicated she was prejudiced by Jones's allegedly deficient notice of appeal. *See Taylor v. United States,* 848 F.2d 715, 717-18 (6th Cir. 1988) (exercising jurisdiction over the entire appeal where notice stated that it appealed only from a "portion of the order" because appellee responded to appellant's brief in full and made no showing of prejudice). We therefore have jurisdiction to review the district court's denial of absolute immunity.

**B. § 1983 Malicious Prosecution Cause of Action in the Sixth Circuit**

The tension between *Rehberg'*s provision of absolute immunity for grand jury testimony and Sanders's § 1983 malicious prosecution claim arises largely as a result of the Sixth Circuit's requirements for malicious prosecution claims involving a grand jury indictment. Therefore, we review the development of this circuit's § 1983 malicious prosecution claim in some detail.

The Sixth Circuit's current version of § 1983 malicious prosecution began with the Supreme Court's decision in *Albright v. Oliver*, 510 U.S. 266, 274-75 (1994), where the Court

held that a claimed constitutional right to be free from prosecution except upon probable cause must be brought under the Fourth Amendment rather than under substantive due process. The Court, however, expressed no opinion as to whether such a claim would succeed under the Fourth Amendment. *Id.* at 275. In the wake of *Albright*, the Sixth Circuit recognized "malicious prosecution" as a cognizable Fourth Amendment violation under § 1983. *See Spurlock v. Satterfield*, 167 F.3d 995, 1005-06 (6th Cir. 1999) (citing *Smith v. Williams*, No. 94-6306, 1996 WL 99329, at *5 (6th Cir. 1996) (unpublished table decision)). It took over a decade, however, for the Sixth Circuit to articulate the elements of a § 1983 malicious prosecution claim. In *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), the Sixth Circuit outlined four elements that a plaintiff must prove to succeed on a § 1983 malicious prosecution claim: (1) a criminal prosecution was initiated against the plaintiff, and the defendant made influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Id.*[4]

Embedded within the lack-of-probable-cause element are additional rules regarding the effect of a grand jury indictment against the plaintiff. Because *Sykes* did not involve a grand jury indictment, it did not discuss these rules, but they are well-established by cases both preceding and following *Sykes*. As a general rule, "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause" for a prosecution. *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002). This rule originates from *Ex parte United States*, 287 U.S. 241, 249-51 (1932), where the Supreme Court held that a district judge could not refuse to issue a bench warrant once a grand jury had returned an

---

[4]This § 1983 version of malicious prosecution differs significantly from the common law version of malicious prosecution. *See Sykes*, 625 F.3d at 309. The common law malicious prosecution tort requires a showing of malice or an improper motive on the part of the defendant. *See id.*; Restatement (Second) of Torts § 653 Elements of Malicious Prosecution. Although several circuits require a showing of malice to state a § 1983 malicious-prosecution claim, *see id.* (citing cases), the Sixth Circuit specifically rejected "malice" as a necessary element of § 1983 malicious prosecution, which the court acknowledged makes the "malicious prosecution" label misleading, *id.* at 309-10. As a result, several Sixth Circuit cases instead refer to this Fourth Amendment claim as "unreasonable prosecutorial seizure," *id.* at 310; *see also Newman v. Twp. of Hamburg*, 773 F.3d 769, 772 (6th Cir. 2014), or "continued detention without probable cause," *Gregory v. City of Louisville*, 444 F.3d 725, 749-50 (6th Cir. 2006).

indictment against the accused. The Court reasoned that "[i]t reasonably cannot be doubted that . . . the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Id.* at 250. The Sixth Circuit, along with other courts of appeals, proceeded to apply this rule in § 1983 malicious prosecution actions. *See Higgason*, 288 F.3d at 877; *see also Webb*, 789 F.3d at 660; *Cook v. McPherson*, 273 F. App'x 421, 423 (6th Cir. 2008); *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006). Although not initially developed in a malicious prosecution context, using this rule to preclude a malicious prosecution action where an indictment has issued makes sense in light of the grand jury's role as "a primary security to the innocent against hasty, malicious and oppressive persecution," *Wood v. Georgia*, 370 U.S. 375, 390 (1962), and "an investigative body acting independently of either prosecuting attorney or judge," *United States v. Williams*, 504 U.S. 36, 49 (1992) (internal quotation marks, emphases, and citations omitted).

This court has developed an exception the *Higgason* rule, however, when a defendant "knowingly or recklessly present[s] false testimony to the grand jury to obtain the indictment." *Webb*, 789 F.3d at 660. This exception for false grand jury testimony is where the primary tension with *Rehberg* arises.

The roots of the exception arose from a case dealing with the determination of probable cause by a judge in a prior criminal hearing—not the determination of probable cause by a grand jury. We held in *Darrah v. City of Oak Park*, 255 F.3d 301 (6th Cir. 2001), that a plaintiff bringing a § 1983 malicious prosecution claim was not barred by collateral estoppel from re-litigating the issue of probable cause, even though a state court had already considered and found probable cause to prosecute in a prior criminal action. The *Darrah* court reasoned that the parties in the malicious prosecution action were not simply re-litigating the existence of probable cause but, rather, whether the defendant-officer "made materially false statements to the state judge that formed the basis of that court's probable cause determination." *Id.* at 311; *see also Hinchman v. Moore*, 312 F.3d 198, 202-03 (6th Cir. 2002) (analyzing and following *Darrah*). The *Darrah* court concluded that a judicial determination of probable cause in a preliminary hearing does not bar re-litigation of the issue in a malicious prosecution action where the

plaintiff alleges that the defendant-officers knowingly provided false information to the magistrate in order to establish probable cause. *Darrah*, 255 F.3d at 311.

Although *Darrah* dealt with the determination of probable cause by a judge in a preliminary hearing, we extended the exception introduced in *Darrah* to the establishment of probable cause by a grand jury indictment. This extension first occurred in *Cook*, 273 F. App'x at 424 (citing *Hinchman*, 312 F.3d at 202-03), where we recognized the indictment's presumptive establishment of probable cause but noted an exception "where the indictment was obtained wrongfully by defendant police officers who knowingly present false testimony to the grand jury." *See also Webb,* 789 F.3d at 660; *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014).

The exception also expanded from knowingly false statements to include statements made 'recklessly" or with "reckless disregard for the truth." *See Webb,* 789 F.3d at 660; *Robertson*, 753 F.3d at 616. This expansion occurred largely under the influence of the § 1983 cause of action for false arrest. Under the false arrest standard, a police officer may be liable for false arrest, even if the officer had a judicially-secured warrant, where the plaintiff establishes: "(1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003) (applying this standard to Fourth Amendment claims of unlawful arrest and malicious prosecution). This two-pronged test has also become the standard for demonstrating a lack of probable cause in malicious prosecution cases where either a grand jury issued an indictment, *see Webb*, 789 F.3d at 660; *Robertson* 753 F.3d at 616; or a judge made a finding of probable cause in a preliminary hearing, *see Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007); *Gregory*, 444 F.3d at 758; *Vakilian*, 335 F.3d at 517.[5]

---

[5]A couple of cases instead locate this two-pronged inquiry (into whether the defendant made (1) false statements (2) material to the finding of provable cause) under the first element—influence or participation in the decision to prosecute—rather than under the second element—a lack of probable cause. See *Johnson v. Moseley*, 790 F.3d 649, 654-55 (6th Cir. 2015); *Sykes,* 625 F.3d at 312. This approach, however, ignores the principle that a judicial finding of probable cause by a grand jury or a judge creates a presumption of probable cause.

### C. Tension Between the Sixth Circuit's Version of §1983 Malicious Prosecution and *Rehberg's* Absolute Immunity for Grand Jury Testimony

Jones claims absolute immunity under *Rehberg*, in which the Supreme Court unanimously held that "grand jury witnesses should enjoy the same immunity as witnesses at trial. This means that a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony." *Rehberg*, 132 S. Ct. at 1506. This, of course, includes perjured testimony. *See Briscoe v. LaHue*, 460 U.S. 325, 326-27, 341-45 (1983). The Court warned that "this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." *Rehberg*, 132 S. Ct. at 1506. The *Rehberg* Court also found no reason to distinguish police-officer witnesses from lay witnesses. *Id.* at 1505.

In determining whether Jones is entitled to absolute immunity, we assume that Sanders's allegations about Jones's conduct are true. *See Buckley v. Fitzsimmons, 509 U.S. 259, 261 (1993).* According to Jones, Sanders cannot prove her cause of action without his grand jury testimony and therefore *Rehberg* entitles him to absolute immunity. Sanders, however, argues that the basis of her malicious prosecution claim is not Jones's grand jury testimony but rather his allegedly false police report, which was provided to the prosecutor's office for preparation of the indictment. Therefore, she maintains that Jones is not entitled to absolute immunity because she can prove her § 1983 claim without Jones's grand jury testimony.

The question thus becomes whether Sanders can satisfy the elements of a § 1983 malicious prosecution claim relying only on Jones's police report. Stated another way, the question is whether false grand jury testimony is a prerequisite for any element of Sanders's claim. On the surface, absolute immunity for Jones's grand jury testimony poses problems for two elements of Sanders's § 1983 malicious prosecution action: (1) influence over or participation in the decision to prosecute, and (2) lack of probable cause. *Rehberg* makes clear that Sanders cannot use Jones's grand jury testimony to prove either of these elements. *Rehberg*, 132 S. Ct. at 1506. That is, how can Sanders, or any other malicious-prosecution plaintiff, prove a defendant influenced or participated in a grand jury's decision to prosecute without relying on

the defendant's sole interaction with the grand jury—that is, the grand jury testimony? Similarly, how can a plaintiff show a lack of probable cause—without flouting *Rehberg*—when the only apparent exception to the indictment's presumptive proof of probable cause is false grand jury testimony?

The district court opinion exhibits this tension between *Rehberg* and the elements of a malicious prosecution claim. While the district court held that Sanders's claim was premised on Jones's investigation and not his grand jury testimony, the district court apparently relied on Jones's grand jury testimony in denying him qualified immunity, stating that "a jury could reasonably conclude that [Jones]'s grand-jury testimony contained knowing or reckless falsehoods as to the identity of the person who sold [the CI] drugs," and "a genuine issue of material fact exists as to whether Defendant recklessly provided false testimony to the grand jury as to the identity of the suspect." To the extent the district court premised it denial of qualified immunity on Jones's grand jury testimony, its decision contravenes *Rehberg*. But because we may affirm the district court's judgment on any basis supported by the record, *Angel v. Kentucky*, 314 F.3d 262, 264 (6th Cir. 2002), we consider whether Sanders can make out the elements of her cause of action using something other than Jones's grand jury testimony, such as his police report. We therefore examine the tensions between *Rehberg* and our malicious prosecution cause of action to determine whether malicious prosecution remains a viable claim where a plaintiff was indicted by a grand jury given that *Rehberg* lends absolute immunity to grand jury testimony.

### 1. Influence over or Participation in Decision to Prosecute

The apparent conflict between *Rehberg* immunity and the first element—influence over the decision to prosecute—is easily overcome. "To be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Webb*, 789 F.3d at 660 (quoting *Sykes*, 625 F.3d at 308 n.5). There must be "some element of blameworthiness or culpability in the participation," as "truthful participation in the prosecution decision is not actionable." *Johnson*, 790 F.3d at 655. In *Webb*, we relied on false grand jury testimony as evidence of participation in the decision to prosecute. 789 F.3d at 663. Clearly, that approach is not supportable under *Rehberg* when the defendant

raises the defense of absolute immunity. *See Rehberg*, 132 S. Ct. at 1506 ("[T]his rule [of absolute immunity] may not be circumvented . . . by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of prosecution."). But absolute immunity was not raised in *Webb*. Because absolute immunity is an affirmative defense that may be waived, *Kennedy v. City of Cleveland*, 797 F.2d 297, 300 (6th Cir. 1986), the *Webb* court was not required to address the effect of *Rehberg* if the defendants did not invoke absolute immunity. Therefore, we are not bound by *Webb* because in this case the defense of absolute immunity was clearly raised by Jones's motion for summary judgment.

Our precedent, however, confirms that false grand jury testimony is not the only way to prove participation in the decision to prosecute. A defendant can also influence or participate in the decision to prosecute by prompting or urging a prosecutor's decision to bring charges before a grand jury in the first place. Indeed, we held in *Webb* that false statements to the prosecutor constituted participation in the decision to prosecute, especially where the prosecutor indicated that he relied on those falsehoods in pursuing the indictment. *Webb*, 789 F.3d at 663-64, 666 (holding that various defendants participated in the decision to prosecute because the prosecutor relied on their false statements in deciding to pursue an indictment). We have reached the same conclusion in cases involving a preliminary hearing where the defendant-officer made false statements to the prosecutor but either did not testify at the preliminary hearing, *Sykes*, 625 F.3d at 317 (holding that the defendant who did not testify at preliminary hearing "influenced or participated in the ultimate decision to prosecute the Plaintiffs by way of his knowing misstatements to the prosecutor"), or had absolute immunity for his testimony at the preliminary hearing, *see Hinchman*, 312 F.3d at 205 (denying qualified immunity to officers who made false statements to prosecutors and other officers, even though they had absolute immunity for their testimony at the preliminary hearing). In other words, false testimony before the judicial decision-maker—grand jury or judge—is not necessary to show influence or participation over the decision to prosecute. False statements to the prosecutor can suffice. *Cf. Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002) (holding that the defendant officer did not make the decision to prosecute the plaintiff where he simply forwarded his police report and medical report to the prosecutor's office where there was no proof that he was consulted

regarding the decision to prosecute and there was no proof that the information in the reports was untruthful).

As a result, Sanders could demonstrate the first element of her claim via the allegedly false statements in Jones's police report. The district attorney's office indisputably received and used the report in deciding to submit the case to the grand jury. The parties agree that this report, in tandem with the CI's identification, "formed the basis for [Sanders's] indictment." In fact, there is no evidence that the prosecutor received any information other than Jones's police report in deciding to pursue the indictment. Therefore, assuming Sanders can demonstrate that Jones's police report contains knowing or reckless falsehoods, she need not resort to Jones's grand jury testimony to prove that he influenced or participated in the decision to prosecute.

**2. Rebutting the Indictment's Probable-Cause Presumption**

The tension between *Rehberg* immunity and the lack-of-probable-cause element is not so easily resolved. As explained, it is well-established in this circuit that an indictment by a grand jury conclusively determines the existence of probable cause unless the defendant-officer "knowingly or recklessly present[ed] false testimony to the grand jury to obtain the indictment." *Webb,* 789 F.3d at 660; *see also Robertson,* 753 F.3d at 616; *Cook,* 273 F. App'x at 424. But under *Rehberg,* a plaintiff cannot use evidence of a grand jury witness's testimony "to support any . . . §1983 claim concerning the initiation or maintenance of a prosecution." *Rehberg*, 132 S. Ct. at 1506. That includes using a defendant's grand jury testimony to rebut the indictment's establishment of probable cause. Thus, *Rehberg* in essence deletes the exception to the general rule that a grand jury indictment conclusively establishes probable cause. *See Barnes*, 449 F.3d at 716 ("[B]ecause [the plaintiff] was indicted pursuant to a determination by the grand jury, he has no basis for his constitutional claim." (quoting *Higgason*, 288 F.3d at 877)).

Restated, Sixth Circuit precedent indicates that a plaintiff who was indicted by a grand jury can overcome the presumption of probable cause only by evidence that the defendant made false statements to the grand jury. False statements made in a police report or to a prosecutor do not satisfy this test. This is because false statements in a police report or made to a prosecutor cannot, on their own, be material to the *grand jury's* finding of probable cause. False statements

could affect the grand jury's determination of probable cause only if introduced through grand jury testimony, and if that testimony is by the defendant, he is absolutely immune under *Rehberg*. Therefore, while *Rehberg* does not provide Jones absolute immunity for his police report, the police report standing alone cannot rebut the grand jury's finding of probable cause. In other words, *Rehberg* effectively defeats Sanders's malicious prosecution claim based on the allegedly false police report because she cannot overcome the presumption of probable cause without using Jones's absolutely immune grand jury testimony.

*Rehberg* itself lends support to this outcome. *Rehberg* specifically forbids attempts to circumvent absolute immunity "by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." *Rehberg*, 132 S. Ct. at 1506. The Court explained that it wanted to prevent civil plaintiffs from "simply refram[ing] a claim to attack the preparation instead of the absolutely immune actions themselves." *Id.* (citing *Buckley*, 509 U.S. at 283 (Kennedy, J, concurring in part and dissenting in part)). It then noted that in most cases, "the witness and the prosecutor conducting the investigation engage in preparatory activity, such as a preliminary discussion in which the witness relates the substance of his intended testimony," and a § 1983 claim could not survive by challenging these preliminary discussions rather than the grand jury testimony itself. *Id*. at 1507.

The Court's observations appear to invalidate Sanders's strategy here: using Jones's police report, which he recited almost verbatim in his grand jury testimony, to support a claim of malicious prosecution. Moreover, the Court observed that "[i]t would thus be anomalous to permit a police officer who testifies before a grand jury to be sued for maliciously procuring an unjust prosecution when it is the prosecutor, who is shielded by absolute immunity, who is actually responsible for the decision to prosecute." *Id*. at 1508. This statement implies that an officer should not be susceptible to suit for malicious prosecution because the decision to prosecute lies wholly within the discretion of the prosecutor. *See id.* at 1507-08; *see also id*. at 1508 n.3 (citing *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976) for the proposition that both grand jurors and prosecutors are "quasi-judicial" officers). This statement also accords with the sentiments of the concurring Justices in *Albright* who criticized malicious prosecution as a theory

of recovery under § 1983. *See Albright*, 510 U.S. at 279 n.5 (Ginsburg, J., concurring); *id.* at 281, 284-86 (Kennedy, J., concurring in the judgment); *id.* at 289-90 (Souter, J., concurring in the judgment).

We note that several post-*Rehberg*, malicious prosecution cases involving a grand jury indictment have not reached this conclusion; rather, they have continued to examine the defendant's grand jury testimony to determine whether it contained any knowing or reckless falsehoods. *See, e.g, Bickerstaff v. Lucarelli*, 830 F.3d 388, 398 (6th Cir. 2016) (holding that the plaintiff did not point to any grand jury proceedings or testimony and "did not take any steps to obtain a transcript of the grand-jury proceedings, which would have revealed the precise nature and content of [the defendant officer's] testimony" to show that the indictment's establishment of probable cause was falsely obtained); *Snow v. Nelson*, 634 F. App'x 151, 157 (6th Cir. 2015) (concluding that the plaintiff could not overcome the indictment's establishment of probable cause because he did not introduce evidence of the grand jury proceedings); *Webb,* 789 F.3d at 660-63 (relying on the defendant's false grand jury testimony as evidence of a lack of probable cause); *Young v. Owens,* 577 F. App'x 410, 416-17 (6th Cir. 2014) (holding that the plaintiffs could not overcome the indictment's determination of probable cause because they did not introduce evidence of false grand jury testimony); *Robertson,* 753 F.3d at 616-17 (analyzing whether the defendant knowingly or recklessly provided false grand jury testimony about the plaintiffs). None of these cases, however, cited *Rehberg* or even mentioned the issue of absolute immunity—presumably because the defendants in those cases did not raise the defense of absolute immunity. Because absolute immunity is an affirmative defense that may be waived, these post-*Rehberg* cases were not called upon to address the effect of *Rehberg* if the defendant never raised absolute immunity as a defense. *See Kennedy*, 797 F.2d at 300. We are thus not bound by these prior circuit decisions because, unlike in those cases, the defense of absolute immunity is squarely before us.

We recognize that *Rehberg* left the door open for at least some § 1983 claims against grand jury witnesses. The *Rehberg* Court clarified in a footnote that "we do not suggest that absolute immunity extends to *all* activity that a witness conducts outside the grand jury room." *Rehberg*, 132 S. Ct. at 1507 n.1. The Court specifically mentioned that falsifying affidavits and

fabricating evidence would constitute unprotected acts. *Id.* Based on this footnote, the Second Circuit has interpreted the scope of absolute immunity under *Rehberg* this way:

> When a police officer claims absolute immunity for his grand jury testimony under *Rehberg*, the court should determine whether the plaintiff can make out the elements of his § 1983 claim without resorting to the grand jury testimony. If the claim exists independently of the grand jury testimony, it is not "based on" that testimony, as that term is used in *Rehberg*. Conversely, if the claim requires the grand jury testimony, the defendant enjoys absolute immunity under *Rehberg*.

*Coggins v. Buonora*, 776 F.3d 108, 113 (2d Cir. 2015) (internal citation omitted), *cert. denied*, 135 S. Ct. 2335 (2015). But Sanders does not allege that Jones falsified or fabricated evidence; instead the essence of her malicious prosecution claim is that Jones misled the prosecutor and the grand jury through negligent and reckless investigation and critical omissions of material evidence.[6] Thus, we decline to create another exception to circumvent the well-settled principle in this circuit that a grand jury indictment is preclusive evidence of probable cause when the scenarios mentioned by the Supreme Court are not before us.

While this application of *Rehberg* may seem harsh in largely foreclosing malicious prosecution claims where the plaintiff was indicted, it is consistent with our original approach to malicious prosecution claims. And that approach protects another important interest: the integrity of the judicial system. As a unanimous Court explained in *Rehberg*, "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Rehberg*, 132 S. Ct. at 1509 (internal quotation marks and citations omitted). "Allowing § 1983 actions against grand jury witnesses would compromise this vital secrecy," *id.*, because "many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution." *Id.* (internal quotations marks and citation omitted); *see also id.* at 1505 (noting

---

[6]The complaint states that Jones "maliciously prosecuted the Plaintiff in violation of her rights under the Fourth and Fourteenth Amendments when he swore out a warrant that lacked probable cause." It alleges that Jones "had ample time and the exclusive control of evidence that was apparently never reviewed before the indictment was initiated by [Jones];" and that "[a]s a result of the indictment, which contained untrue and uncorroborated statements, as well as material omissions, the grand jury was induced to return a true bill in reliance upon said statements." *Id.*

that absolute immunity is essential for both trial witnesses and grand jury witnesses because "[i]n both contexts, a witness' fear of retaliatory litigation may deprive the tribunal of critical evidence"). Lastly, as *Rehberg* observed, as with perjurious trial testimony, the possibility of prosecution for perjury provides a sufficient deterrent. *Id.* at 1505.[7]

## V. CONCLUSION

For the foregoing reasons, the judgment of the district court is **REVERSED** and the matter is **REMANDED** for entry of judgement in favor of Jones.

---

[7]To the extent Sander's claim is premised on an allegedly false police report, it fails. The preparation of a police report is nontestimonial, investigative activity, for which Jones would be entitled at most to qualified immunity. *See Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) (an officer who submits an affidavit for a warrant leading to an arrest without probable cause is not entitled to absolute immunity, but only qualified immunity). Jones is entitled to qualified immunity because Sanders cannot establish the violation of a constitutional right. *See Higgason*, 288 F.3d at 877 (holding that the plaintiff had no basis for a constitutional claim because he "was indicted pursuant to a determination made by the grand jury"); *Barnes*, 449 F.3d at 716-17 (same, relying on *Higgason*; resolving question on qualified immunity grounds); *see generally Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (holding that a defendant is entitled to qualified immunity unless the plaintiff establishes the violation of a clearly established constitutional right).