**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0094n.06

Case No. 16-3125

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Feb 06, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| GLENN TINNEY, | ) | |
| | ) | |
|     Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| RICHLAND COUNTY, et al., | ) | |
| | ) | |
|     Defendants-Appellees. | ) | |

Before: SILER, BATCHELDER, and GRIFFIN, Circuit Judges.

**SILER**, Circuit Judge. Glenn Tinney appeals from the district court's grant of judgment on the pleadings and grant of summary judgment in favor of Defendants in a case involving allegations of civil rights violations. Tinney sued Richland County, Ohio; James Mayer, III, Administrator of the Estate of James Mayer, II; Joseph Masi; David Mesaros; and unknown employees of Richland County; alleging claims under 42 U.S.C. § 1983 and state law.[1] Tinney claims that Defendants knowingly secured false confessions used to perfect a guilty plea, which served as the basis for a conviction later vacated. We **affirm** because Defendants are entitled to judgment as a matter of law in their favor.

I.

Ted White died from head injuries in Mansfield, Ohio. At the time, Mayer II was the Richland County Prosecutor, Mesaros was an assistant prosecutor, and Masi was an investigator. Masi interviewed Tinney about White's death, and Tinney, in separate interviews, confessed

---

[1]Tinney substituted James Mayer, III after the unrelated death of James Mayer, II.

twice to murder. Mesaros was present during one of those confessions. The confessions were uneven and inconsistent with evidence obtained during the investigation into White's death. Mesaros and Masi discussed a plea deal with Tinney and his court-appointed counsel, to which both agreed.

One day after Tinney's indictment, he pleaded guilty to the murder and aggravated robbery of White. The judge accepted the plea on the basis of the confessions. The prosecutor's office did not inform the local police department investigating the crime of the confessions until after Tinney pleaded guilty.

In 2012, Tinney sought to vacate his conviction on grounds that his confessions were false, alleging that the confessions were the product of mental vulnerability and coercion. In 2013, the Common Pleas Court of Richland County vacated the sentence, finding Tinney's "mental illness documented by prison medical records and attested to by the psychologists seriously interfered with his understanding of the charges and consequences of his confession," and concluding that his "confessions do not provide any serious support for his conviction for murder, suggest that he is not guilty, and make it manifestly unjust to deny the withdrawal of his guilty plea." The court also concluded that Tinney "had adequate legal representation at his plea from an attorney who subsequently attempted to have a court-ordered mental exam"; that "[t]here was no apparent defect in the Crim. R. 11 plea hearing"; that "it was difficult to detect overt mental illness during his plea discussions and hearing"; and that "it is not possible to determine whether Mr. Tinney is innocent." The prosecutor's office declined to retry Tinney.

Tinney brought this lawsuit against Defendants for violations of federal and state law. In 2014 and 2015, the district court dismissed several claims as legally implausible. *Tinney v. Richland Cty.*, No. 1:14 CV 703, 2015 U.S. Dist. LEXIS 16266, at *9–11, 23, 35–36 (N.D. Ohio

Feb. 10, 2015); *Tinney v. Richland Cty.*, No. 1:14 CV 703, 2014 U.S. Dist. LEXIS 169601, at *8 (N.D. Ohio Dec. 8, 2014). In 2016, the district court granted summary judgment on all remaining claims. *Tinney v. Richland Cty.*, No. 1:14 CV 703, 2016 U.S. Dist. LEXIS 12251, at *49 (N.D. Ohio Feb. 2, 2016).

II.

We review de novo a motion for judgment on the pleadings. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citation omitted); *see also* Fed. R. Civ. P. 12(c). "The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz*, 592 F.3d at 722 (citation omitted). We review de novo a district court's grant of summary judgment, "construing the evidence and drawing all reasonable inferences in favor of the nonmoving party." *Textileather Corp. v. GenCorp Inc.*, 697 F.3d 378, 381 (6th Cir. 2012); *see also* Fed. R. Civ. P. 56(a).

III.

Tinney argues that record evidence shows that Defendants knowingly or recklessly procured a false confession to secure a wrongful conviction. According to Tinney, the district court improperly resolved factual disputes.

A. Judgment on the Pleadings on Self-Incrimination

Tinney asserts that his self-incrimination claim should not have been dismissed because indictment proceedings and plea hearings are criminal proceedings for purposes of the Fifth Amendment. Tinney emphasizes that the confessions constituted the only evidence offered at the plea hearing and that his incapacity rendered the confessions involuntary, suspect, and false.

The law at all relevant times was unsettled on whether a violation of the right against self-incrimination can occur without a trial. In 1990, the Supreme Court observed that

"[a]lthough conduct by law enforcement officials prior to trial may ultimately impair that right, a constitutional violation occurs only at trial." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990). In an unpublished opinion twenty years later, we reaffirmed that limiting principle: "But when the government does not try to admit the confession at a criminal trial, the Fifth Amendment plays no role." *Smith v. Patterson*, 430 F. App'x 438, 441 (6th Cir. 2011) (citing *Chavez v. Martinez*, 538 U.S. 760, 772–73 (2003) (plurality opinion)). Although law in this area is still coalescing, our cases—at minimum—cut against Tinney's position. Defendants are entitled to qualified immunity on this claim because the right at issue was not clearly established in 1992.

## B. Summary Judgment on Malicious Prosecution

Tinney contends that evidence supports his malicious-prosecution claims against Masi. Tinney posits that an indictment predicated on a false confession cannot evince probable cause. The presumption of probable cause arising from an indictment, Tinney asserts, can be overcome when officials knowingly or recklessly present false testimony to a grand jury.

The district court did not err in granting summary judgment on the malicious-prosecution claims. A claim for malicious prosecution under § 1983 arising from violations of the Fourth Amendment requires the following:

> (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014) (citation omitted). "It has been long settled that the finding of an indictment, fair upon its face, by a properly constituted grand jury,

conclusively determines the existence of probable cause." *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) (internal citations and quotation marks omitted).

A grand-jury witness has absolute immunity from § 1983 claims predicated on the witness's testimony. *Rehberg v. Paulk*, 132 S. Ct. 1497, 1506 (2012). Absolute immunity "[cannot] be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support [a] § 1983 claim concerning the initiation or maintenance of a prosecution." *Id.*; *see also Briscoe v. LaHue*, 460 U.S. 325, 326–27, 341–45 (1983) (holding that absolute immunity applies to claims of perjured testimony). Absolute immunity does not protect *"all* activity that a witness conducts outside of the grand jury room"; "falsify[ing] affidavits" and "fabricat[ing] evidence" are still actionable. *Rehberg*, 132 S. Ct. at 1507 n.1 (citations omitted). According to *Rehberg*, "no reason [exists] to distinguish police-officer witnesses from lay witnesses." *Sanders v. Jones*, No. 15-6384, 2017 U.S. App. LEXIS 360, at *18 (6th Cir. Jan. 9, 2017) (citation omitted).

The district court did not err in concluding that Masi is absolutely immune under *Rehberg*:

> As defendant points out, plaintiff is attempting to prove the lack of probable cause—an element of his malicious prosecution claim—by relying on Masi's grand jury testimony to show reckless disregard for the truth. Even though plaintiff claims these allegations are based on conduct which occurred before the appearance at the grand jury, plaintiff's attempt to prove this element with Masi's grand jury testimony shows that his claim is "based on" that testimony. Thus, there would be absolute immunity.

*Tinney*, 2016 U.S. Dist. LEXIS 12251, at *48. The second amended complaint confirms the district court's conclusion:

Count XI – 42 U.S.C. § 1983
Fourth Amendment Malicious Prosecution

133.  The prosecution of Tinney was initiated without probable cause to believe that he had committed the crime.

134.  As described more fully above, Defendant Masi made, influenced, or participated in the decision to initiate the criminal prosecution against Tinney.

135.  Specifically, *Masi testified* before the May 1992 Richland County grand jury with reckless disregard for the truth.  *He testified* regarding Tinney's statements without acknowledging either the glaring inconsistencies between Tinney's account of the murder and the actual facts of the crime, or the numerous indicators that Tinney was mentally ill when he gave the statement, facts that seriously undermined any reasonable suspicion that Tinney had been involved. *He also testified* without acknowledging that he himself had provided Tinney with much of the information to which Tinney allegedly confessed, or that he knew that none of the details provided by Tinney had been corroborated by investigation.  Finally, *he testified* without acknowledging that he knew that Tinney's April 2, 1992 statement was false and unworthy of belief.

136.  Defendant Masi's omissions, misrepresentations and false statements *during the grand jury testimony* were material to the finding of probable cause.

137.  On June 26, 2015, the proceeding was resolved in Tinney's favor when the indictment against him was dismissed.

138.  As a direct and proximate result of the legal proceeding maliciously instituted by Defendants, Plaintiff suffered damages, including loss of liberty, physical injury and sickness, and emotional pain and suffering, as is more fully alleged above.

*Rehberg* forecloses the claim for malicious prosecution because Tinney cabins the allegations to conduct as a grand-jury witness.  *Compare Sanders*, 2017 U.S. App. LEXIS 360, at *24 ("Therefore, assuming Sanders can demonstrate that Jones's police report contains knowing or reckless falsehoods, she need not resort to Jones's grand jury testimony to prove that he influenced or participated in the decision to prosecute."), *with Royse v. Wilbers*, No. 16-5199, 2016 U.S. App. LEXIS 18120, at *3 (6th Cir. Oct. 3, 2016) ("In cases raising an absolute immunity issue, courts have followed *Rehberg* in concluding that, in claims for malicious prosecution based only on grand-jury testimony, absolute immunity applies."); *Hoschar v. Layne*, 647 F. App'x 632, 634 (6th Cir. 2016) (same); *Kavanaugh v. Lexington Fayette Urban Cty. Gov't*, 638 F. App'x 446, 454–55 (6th Cir. 2015) (same); *Vaughan v. City of Shaker*

*Heights*, 514 F. App'x 611, 613 (6th Cir. 2013) (same). Tinney fails to persuade that his claims are directed to Masi's pre-testimony, investigative conduct because the only record evidence to prove that pre-testimony conduct influenced the grand jury's decision is to rely on Masi's testimony.

C. Judgment on the Pleadings and Summary Judgment on Procedural Due Process

Tinney argues that Defendants' use of fabricated evidence to secure a conviction violated procedural due process. Tinney denies that procedural due process can never be implicated in a pretrial proceeding. If the judge taking a plea is not aware that the statement on which that plea was based is fabricated, Tinney argues, that judge cannot make an informed decision.

Tinney cannot establish a violation of procedural due process. A procedural-due-process violation occurs when a state interferes with a liberty or property interest and the procedures attendant to that interference preclude sufficient notice and opportunity to be heard. *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). We have observed that cases involving guilty pleas "deal with constitutional rights other than the due process clause." *Herrada v. City of Detroit*, 275 F.3d 553, 559 (6th Cir. 2001). To the extent Tinney claims that Defendants should have informed the grand jury or judge at the plea hearing of their suspicions as to the veracity of the confessions, Defendants have qualified immunity because "[w]hatever rights appellants had to receive exculpatory evidence prior to entering their pleas was not clearly established." *Robertson*, 753 F.3d at 621.

If Tinney has a claim, that claim is directed to how evidence was procured or the result of that procurement, not the procedural process for dealing with evidence. His claim is synonymous with fraud on the court, a cause of action not clearly actionable for lack of procedure. *See Williamson v. Recovery Ltd. P'ship*, 826 F.3d 297, 302 (6th Cir. 2016)

(recognizing inherent powers, as opposed to due process, as the source for punishing fraud on the court). Although Tinney provided unreliable confessions, the record is devoid of allegations suggesting a problem with the guilty plea itself. And although the conviction was vacated, Tinney fails to allege or present evidence demonstrating that he did not appreciate the ramifications of pleading guilty.

### D. Summary Judgment on Substantive Due Process

Tinney maintains that the district court erred in two aspects in its grant of summary judgment against the substantive-due-process claims. He first suggests that a reasonable juror could determine that the conduct leading to his guilty plea shocks the conscience and is cognizable under the Fourteenth Amendment. Tinney maintains that the district court erred in accepting Defendants' assertions that they observed no signs of mental illness and had no reason to doubt the legitimacy of Tinney's confession. Second, Tinney asserts that the district court erred in analyzing the claim under the rubric of failure to investigate and malicious prosecution. He presses that the gravamen of his claims is that by taking advantage of his mental illness to extract a false confession, then ignoring the obvious and provable falsity of its nature, Defendants abused their power in a manner that shocks the conscience.

Substantive due process "protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that shock the conscience." *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (internal quotation marks and citation omitted). We have resisted application of shock-the-conscience claims in cases that do not involve physical force. *See Cassady v. Tackett*, 938 F.2d 693, 698 (6th Cir. 1991) (rejecting a claim that being forced to barricade in an office after jailer and deputies threatened to kill "shocked the

conscience"). For example, *Braley v. City of Pontiac* held that allegations of false arrest, false imprisonment, and malicious prosecution cannot support a substantive-due-process claim absent physical injury:

> Applying the "shock the conscience" test in an area other than excessive force, however, is problematic. Not only are there fewer instances in the case law, but . . . the "shock the conscience" standard, fuzzy under the best of circumstances, becomes fuzzy beyond a court's power to interpret objectively where there is a dearth of previous decisions on which to base the standard. We doubt the utility of such a standard outside the realm of physical abuse, an area in which the consciences of judges are shocked with some degree of uniformity.

906 F.2d 220, 226 (6th Cir. 1990).

Although allegations of a plot to use a false confession to secure a guilty plea are serious and disconcerting, the law at the time of the incident did not clearly establish a right without some showing of bodily violation from the constitutional abridgement. *Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987) ("[S]ubstantive due process is concerned with violations of personal rights of privacy and bodily security . . . . [T]he . . . inquiry . . . must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." (citation omitted)). While Tinney pleaded mental and physical injury from coping with the false confessions, the tactics used to procure the confessions did not involve threats or cause injury. And no allegations exist of untoward conduct during his incarceration. In addition, a suspect's mental illness does not render a confession involuntary for purposes of due process. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *see also Daoud v. Davis*, 618 F.3d 525, 530 (6th Cir. 2010). We cannot say that Defendants were on notice that their conduct shocked the conscience under the Fourteenth Amendment.

### E. Dismissal of Federal Claims Against Mayer

Tinney asserts that the claims against Mayer should survive his death. While the foregoing analysis demonstrates that no federal claims remain against Mayer, even if they did, the result would be the same. Where not inconsistent with federal law, state law governs the survival of claims against a decedent. *Haggard v. Stevens*, 683 F.3d 714, 717 (6th Cir. 2012). Under Ohio law, claims at common law and arising from "injuries to the person" survive:

> In addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto.

Ohio Rev. Code Ann. § 2305.21. We have reviewed Ohio law on survivability, concluding that "injuries to the person" are synonymous with "personal injury" claims. *See Tinch v. City of Dayton*, Nos. 94-3436, 94-3516, 1996 U.S. App. LEXIS 5716, at *7 (6th Cir. Feb. 20, 1996). No party disputes that § 1983 is a creature of statute. And no party disputes that a showing of physical injury is required under Ohio law. But unlike causes of action for personal injury in which the lawsuit arises from physical harm, constitutional causes of action arise from harm to individual rights irrespective of palpable harm. The gravamen of Tinney's allegations is civil rights violations to which physical or emotional harm attach as an aftereffect. *See Witcher v. City of Fairlawn*, 680 N.E.2d 713, 716 (Ohio 1996) (finding that a claim for false imprisonment abated at claimant's death because it was not a physical injury but rather a deprivation of personal liberty).

### F. Judgment Against Sundry Claims

Tinney concludes by contending that reversal is appropriate for every claim in which the district court relied on the absence of constitutional violations. He specifies that such a result is

appropriate for his claims of conspiracy, *Monell* liability,[2] and intentional infliction of emotional distress. But he goes no further in support of those claims. Tinney does not press on appeal the dismissal of his claims for violations of Sixth Amendment, "failure to intervene," respondeat superior against Richland County, or indemnification against Richland County. And he does not contest Defendants' assertion that he fails to advance arguments in favor of *Monell* liability against Richland County.

We conclude that these sundry claims (and any others not addressed) fail because Tinney does not make supporting arguments in their favor. *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006) ("[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). To say a claim is triable does not replace arguing why the claim is triable.

**AFFIRMED**

---

[2]*Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658 (1978) (recognizing a claim for civil liability against municipalities under § 1983).